## C. W. BROADFOOT v. CITY OF FAYETTEVILLE.

(Decided April 18, 1899).

*Towns and Cities—Old and New Charter—Debts—Bonds and Coupons—Statute of Limitations—Mandamus.*

1. Debts due from a municipal corporation are not extinguished by the repeal of its charter, and still exist notwithstanding that repeal.

2. When the old charter is repealed and a new one is granted, in which latter are bestowed by law all the benefits and property of the old, the burden of the old must be borne by the new; where the benefits are taken the burdens are assumed.

3. The City of Fayetteville is the successor of the Town of Fayetteville, and liable for its debts, and the remedies for the enforcement of them existing when the contract was made must be left unimpaired by the Legislature unless a substantial equivalent is provided.

4. The provisions in the Act of 1893 incorporating the City of Fayetteville, which prohibit the levying of taxes by the new corporation for the payment of the bonds issued by the Town of Fayetteville, are invalid and can not be regarded.

5. The coupons being for interest, to become due on the bonds, are a part of the bonds and partake·of their nature—the bonds are specialties, and so are the coupons. The same statute of limitations (ten years) applies to both. In the computation of time the period elapsing between the repealing Act of 1881 and the reincorporating Act of 1893 is not to be counted, ability to resort to the Courts having been taken away from the creditor during that time.

6. The creditor is entitled to a peremptory *mandamus* requiring the proper city authorities to levy and collect taxes upon property and polls within the city, with which to pay his claim.

CIVIL ACTION to enforce the payment of coupons matured upon bonds issued by the old Town of Fayetteville, tried before *Bynum, J.,* at Fall Term, 1898, of CUMBERLAND

Superior Court.   The complaint alleged that the plaintiff was
the holder and owner of certain coupons matured upon bonds
issued by the old Town of Fayetteville—that the defendant,
the City of Fayetteville, was the successor to the Town, with-
out any addition to its population, territory or taxable
property and succeeding to all its rights, privileges, franchises
and property, and was therefore liable for all its duties, bur-
dens and debts; that the defendant, upon demand made, had
refused to pay the plaintiff's claim, and the relief asked is for
judgment and mandamus.   The Answer denied that the City
of Fayetteville was the successor to the town of Fayetteville,
or in any way liable for its debts; that it had no power under
its Charter to levy taxes for any purpose, and the Statute of
Limitation is pleaded.

A jury trial was waived, and the cause was submitted both
as to facts and law to the decision of His Honor.

*Judgment.*

This cause coming on to heard before his Honor Judge
Bynum, a jury trial having been waived, the following facts
were shown to the court:

1. That plaintiff held and owned the coupons described
in the complaint, being coupons cut from certain bonds issued
by the town of Fayetteville under authority of law, and said
coupons being due and payable within the years 1879, 1880
and 1881.

2. That said coupons were duly presented for payment
to the proper authorities of the said town, and payment
refused, and that plaintiff brought his actions upon the same
against the Mayor and Commissioners of the town of Fayette-
ville to Fall Term, 1880, and to Fall Term, 1881, and that
these actions were pending when the charter of the said town

was surrendered under the Act of March 5th, 1881, Private Laws of 1881, Chapter 58, page .777.

3. That on August Term, 1882, of this Court, judgment was rendered in said actions in favor of plaintiff and against the Mayor and Commissioners of the town of Fayetteville, upon the said coupons aggregating $869.97, with interest on aggregate principal, $742 from August 28, 1882, with costs, $25.05, which judgment was duly docketed in this Court, and the coupons were filed in the judgment roll.

3½. That the taxing district of Fayetteville was established by chapter 112, Private Acts of 1883. Reference is hereby made to the following statutes as relating to this taxing district: Chapter 112, Private Acts of 1883; chapter 86, Private Acts of 1885; chapter 51, Private Acts of 1887; chapter 144, Private Acts of 1889; chapter 270, Private Acts of 1891.

4. That the present city of Fayetteville, the defendant, was duly chartered on the first of March, 1893. See Private Laws 1893, chapter 153, page 231.

5. That the said corporation was created by the Legislature for the same general purposes, embracing the same territory, the same population and the same taxable property, as the former town of Fayetteville.

6. That the plaintiff, just before bringing this action, duly presented the said judgments to the defendant and notified its Mayor and Treasurer that the said judgments were based upon the said coupons, and that they were filed in said judgment roll, and demanded payment of the same, and that payment of the same was refused upon the ground that defendant was not liable for, and had no authority in law to pay the same.

7. That this action was begun on the 24th day of April, 1894.

8. That the first complaint was filed May, 1894, setting forth the same cause of action as is set forth in the amended complaint as a first cause of action, and the defendant in due time filed answer thereto substantially as in the amended answer, but said answer has been misplaced, and can not now be produced.

9. That afterwards, the plaintiff on April 1, 1897, by leave of Court, filed an amended complaint, in which he for the first time set forth the second and third causes of action as therein stated, and the defendant filed its amended answer in apt time and by agreement at November Term, 1897.

10. That at August Term, 1882, the plaintiff having procured his judgments and mandamuses, as contained in the judgments of the Court, his said two judgments were duly docketed, and the cases retired from the docket.

Upon the foregoing facts found, it is considered and adjudged that plaintiff's claim is not barred by the statute of limitation; that the plaintiff recover judgment against the defendant for the sum of $869.97, with interest on $742 from August 28, 1882, and costs, $25.05, together with the costs of this action to be taxed by the Clerk.

It is further ordered and adjudged that a peremptory writ of mandamus issue out of this court to the defendant, commanding it forthwith to levy and collect a tax upon all the taxable property of defendant, sufficient to pay the said judgment, and to pay the same into this Court for the plaintiff, and to make return to the next term of this Court.

WM. P. BYNUM, JR.,
Judge Presiding.

To this judgment the defendant excepts and appeals to the Supreme Court.

Notice of appeal waived. Bond fixed at $25.

124—31

By aggreement, the pleadings and the foregoing findings of fact and judgment, constitute the case on appeal.

The defendant files exceptions as appears in their bill of exceptions.

. WM. P. BYNUM, JR.,
*Judge Presiding.*'

*Exceptions filed by Defendant's Counsel to the Judgment Rendered.*

The defendant excepts to the findings and judgment in this cause on all grounds apparent on the face of the record, and especially on the following grounds:

I. For that the Court did not adjudge that the plaintiff can not recover anything in this action, because he did not bring his claim within the special provisions of section 19, chapter 112, Private Laws of 1883, as amended by section 6, chapter 270, Private Laws of 1891, to-wit: That the claim was not presented for settlement under the terms of the acts cited, on or before January 1,1893.

II. That the Court erred in his conclusion that the plaintiff's case is not barred by the general and special statutes of limitations pleaded by defendant.

III. That the Court erred in ordering the issuance of peremptory writ of mandamus, when by the acts cited it appears that defendant has no power to levy a tax.

IV. That the Court in rendering judgment in favor of plaintiff and ordering a writ of mandamus to issue, violated the express prohibition of a coordinate branch of the Government, to-wit: of the General Assembly of North Carolina, as contained in the several Private Acts cited in the Court's finding of fact and now in force.

H. McD. ROBINSON,
N. W. RAY,
*Attorneys for Defendant.*

*Messrs. N. W. Ray* and *H. McD. Robinson,* for appellant.
*Messrs. R. P. Buxton* and *J. C.* and *S. H. MacRae,* for
plaintiff.

MONTGOMERY, J.   Under the provisions of an Act of the
General Assembly of the session of 1881, the Charter of the
town of Fayetteville was surrendered and repealed.   At its
session in 1883 the General Assembly created a taxing and
police district out of the territory included in the boundaries
of the old town of Fayetteville, the taxing and police district
to be called Fayetteville.   Under the last mentioned Act all
of the property of the former town of Fayetteville was trans-
ferred to the custody and control of the Board of Cimmission-
ers appointed by the General Assembly.   The public build-
ings, streets and squares and the policing of the same were
placed under the charge of those Commissioners.   Taxes were
levied by the General Assembly with a specification as to the
purposes to which they were to be applied.   The General
Assembly, at its session of 1893, incorporated the inhabitants
within the old territory of the town of Fayetteville under the
name of the City of Fayetteville.

The plaintiff in 1880 and 1881, being the owner of 52 cou-
pons cut from bonds executed by the town of Fayetteville, pre-
sented the same for payment, and upon payment being refused
brought two actions against the town of Fayetteville to recover
the amounts due on the coupons.   Judgments were rendered
at August term, 1882, of Cumberland Superior Court in the
two actions in favor of the plaintiff, but between the time
of action begun and judgment rendered the charter of the then
defendant, the town of Fayetteville, was surrendered and
repealed.

The complaint in the present action embraces three causes
of action.   The first is founded upon the judgments procured
in 1882 by the plaintiff against the town of Fayetteville; the

second upon the coupons themselves, upon which the judgments were procured, and the third upon the plaintiff's alleged right to have the two cases against the town of Fayetteville, which were pending in the Superior Court of Cumberland County, at its August Term, 1882, reinstated on the Civil Issue Docket, brought forward and consolidated into one action, and judgment rendered therein for the amount due on the 52 coupons mentioned in those actions. The plaintiff's allegations are that the judgments against the town of Fayetteville, or the coupons, if the judgments are invalid, are still due; that although the charter of the old town of Fayetteville was repealed and surrendered under the Act of 1881, yet the Act incorporating the City of Fayetteville rehabilitated the old town of Fayetteville, and that the city is the successor of he old town, and therefore liable to the plaintiff for the amount of the coupons.

The defendant admits the repeal of the charter of the town of Fayetteville, that the coupons have never been paid, that the judgments were entered against the town of Fayetteville after its charter had been surrendered, and that the inhabitants of the old town have been incorporated by the Act of 1893 under the name of the City of Fayetteville. The defendant avers, however, that the judgments procured by the plaintiff against the town of Fayetteville were void and denies that the City of Fayetteville is the successor of the old town of Fayetteville, or liable on the coupons or on the judgments.

It is of the first importance then to consider whether the City of Fayetteville, the new corporation, chartered by the Act of March 1893, is so far the successor of the town of Fayetteville, the old corporation, as to be liable for its debts. If this question is answered in the affirmative, the Statutes of Limitation set up in the answer, as a defence to the action,

will then have to be discussed and decided. This court at one time adopted the old common law rule, that, upon the civil death of a corporation, the grantors of its real estate took it by reversion, and the debts due to and from it were extinguished. *Fox v. Horah,* 36 N. C., 358. This rule was changed by the Court in the case of *Wilson v. Leary,* 121.. D N. C., 90, and that of *Fox v. Horah,supra,* was overruled. The debt then due to the plaintiff by the town of Fayetteville was not extinguished by the repeal of its charter, and still exists, notwithstanding that repeal. *Merriwether v. Garrett,* 102 U. S., 472; *Wolf v. New Orleans,* 103 U. S., 358; *Mobile v. Watson,* 116 U. S., 289; *O'Conner v. Memphis,* 6 Lea, 730.

Apparently each corporation created by a separate charter is a distinct entity,and from this it may be argued with plausibility that no two successive corporations can be connected unless they are connected by the terms of the Act which created them. But that view must be often only apparently true. If, in the case of a municipal corporation, the old charter should be repealed and a new one granted, and the new one should include the same territory, substantially the same people, and the great mass of the taxable property of the old corporation, and the property of the old corporation used for public purposes, be passed over to the possession and control of the new corporation without consideration from the new corporation, it would be difficult to appreciate how. the property and the benefits of the old corporation could be received by the new one without the shouldering of its responsibility by the new one. It must be that the creditors of a defunct municipal corporation, whose money and property have helped to build up and improve the wealth and influence of the old corporation (although they must submit when a charter is absolutely abolished, and while the old territory and people remain unincorporated) have the right in equity to have a new corporation, embracing the same territory and

the same inhabitants and the same taxable property, considered as the successor of the old, at least so far as its liabilities for the debts of the old corporation are concerned. When the old charter is repealed and a new one is granted, upon which latter are bestowed by law all the benefits and property of the old, the burden of the old must be borne by the new; where the benefits are taken, the burdens are assumed.

So strong has this view been impressed upon the Courts that in *O'Conner v. Memphis, supra,* the Court said: "But in no case have the Courts ever failed to declare the identity or succession, or continuity of the two corporations where the same corporators and the same corporate property have passed to the new corporation. The terms of the charter have in such cases never been construed otherwise."

The same doctrine was laid down in *Mount Pleasant v. Beckwith,* 100 U. S., 514; in *Broughton v. Pensacola,* 93 U. S., 266; in *Wolfe v. New Orleans* and in *Mobile v. Watson, supra.* The Acts of the Legislature repealing the old charters of the cities of Memphis and Mobile, and incorporating those cities, were passed on the same day; and it might be inferred that these acts were considered as one and the same in legislative intent. But in the case of *Amy v. Selma, cited,* endorsed and approved with high commendation by the Supreme Court of the United States, in *Mobile v. Watson, supra,* the acts were not simultaneously passed. The repealing Act was passed in December, 1882, and the reincorporating Act in February, 1883. In that case the Supreme Court of Alabama held that the Act repealing the charter of the city of Selma, was without effect or operation upon the liabilities of the city of Selma; that the Act of February incorporating the inhabitants and territory formerly embraced within the limits of the city of Selma, was a reorganization under the corporate name  of Selma, of the same corporators, and

embraced substantially the same territory as the city of Selma; that Selma was the successor of the city of Selma, and liable for the payment of its debts.

It appears also in the case of *Broughton v. Pensacola, supra,* that the repeal of the charter of Pensacola was under one Act and the reincorporation of the city under the same name was under a different law.

In the case before us 12 years elapsed between the repeal of the charter of the town of Fayettevill and the incorporation of the City of Fayetteville; but we cannot see how that can alter the principle involved in the case. The foundation on which the liability of the new corporation rests is that the new corporation embraces the same territory, the same corporators, the same taxable property, and has received the property of the old corporation without consideration; and for these benefits must, in return, bear the burdens of the old corporation. The liability in such a case commences from the receiving of the bneefits, and whether those benefits were received one or ten years, or more, from the repeal of the old charter, makes no difference.

But it is argued for the defendant that even if the Act of 1893 did have the effect to make the City of Fayetteville the successor of the old town of Fayetteville, yet the new corporation was not liable for the debts of the old corporation, but on the other hand was expressly prohibited from assuming the debts of the old town or from paying any part of them, except such as were provided for in the Act of 1883, and the plaintiff claimed no benefit under that Act. The position was without any citation of authority to support it, and to us it did not seem to be sound (and the authorities so far as they have been examined by us are all the other way). If the law was as is contended for by the defendant, then it would be in the power of the Legislature to destroy the claims of credi-

tors against municipal corporations by simply repealing their charters on one day, and on the next re-incorporating the same inhabitants in the same territory, taking care to insert in the repealing Acts a provision to the effect that the new corporation should not be liable for the debts of the old. Such legislation would be contrary to every idea of justice and law, and obnoxious to the Constitution of the United States, and to that of our own State.

In *Amy v. Selma, supra,* it appeared that the Act incorporating Selma authorized the proper officials to levy taxes, but declared that no funds derived by the corporation from the collection of taxes or from any other source should be used for the payment of any of the debts of the city of Selma, the old corporation; and as we have seen, the Supreme Court of Alabama in that case held that the provision was inoperative against the debts and liabilities of the City of Selma, and the Supreme Court of the United States, in *Mobile v. Watson, supra,* cited the decision with marked approval.

But the defendant further contends that even if it should be held by this Court that the debts against the town of Fayetteville were not extinguished by the repeal of the town charter and that they are valid and good against the city of Fayetteville, yet the officials of the new corporation are not only not authorized to levy taxes to pay those debts, but are prohibited from doing so by the very terms of the Act of incorporation, and that "the power of taxation is legislative, and cannot be exercised otherwise than under the authority of the Legislature," as was said in *Merriwether v. Garrett, supra.* That is a good proposition of law, and it was applicable to the condition of affairs which appeared in that case, as well as from the view of the law which that Court took of the effect of the repeal of the charter of Memphis, and the one creating out of the same territory a taxing district. That court held

that the charter of Memphis was absolutely repealed, and
treated the case of *Merriwether v. Garrett,* upon that view.
The effect of the Act creating the taxing district was not
directly before the court.   We have seen that the Supreme
Court of Tennessee in *Luehrman v. Memphis,* 2 Lea, 425;
*O'Conner v. City of Memphis,* 6 Lea, 730, held that the tax-
ing district was a reorganization of the city of Memphis. But
the Act of the Tennessee Legislature, creating the taxing dis-
trict of Shelby, was a very different Act from the act of the
the North Carolina Legislature which created the taxing dis-
trict of Fayetteville.   The former conferred on the officers of
the former extensive legislative and judicial powers, and
provided that at the end of two years the district should be
governed by officers of its own choice.   No such powers were
conferred on the officers of the taxing district of Fayetteville.
But that the power of taxation which is vested in the Legisla-
ture is such a power as the defendant contends for, can not be
maintained.   The power is subject to the qualification which
attends all State legislation, that is, that it must not be exer-
cised to impair the obligation of contracts, thereby con-
flicting with the Constitution of the United States and of
North Carolina.   There is no doubt of the power of the Legis-
lature to repeal, out and out, a municipal charter, and there is
no doubt that after the application of the property of the
defunct corporation not necessary for public uses, (public
buildings, streets, squares, parks, promenades, wharves, land-
ing places, fire engines, hose and hose carriages, engine houses
and engineering instruments, being property necessary for
public uses, as is held in *Merriwether v. Garrett, supra,* and
not subject to the demands of creditors of the corporation)
towards the payment of any remaining indebtedness, the debt
can not be enforced, although it is not extinguished.   But as
long as the charter is not repealed, or if repealed and be

rehabilitated so as to become the successor of the old and liable for its debts, the taxing power in the hands of the Legislature can not be used to decrease or impair the rights of the creditor in the enforcement of the collection of the debt.   In reference to this matter it was said in the case of *Wolf v. New Orleans, supra*s "This doctrine has been repeatedly asserted by this Court when attempts have been made to limit the power of taxation of a municipal body, upon the faith of which contracts have been made, and by means of which alone they could be performed.   So long as the corporation continues in existence, the court has said that the control of the Legislature over the power of taxation, delegated to it, is restrained to cases where such control does not impair the obligation of contracts made upon a pledge expressly or impliedly given that the power shall be exercised for their fulfillment.   However great the control of the Legislature over the corporation while it is in existence, it must be exercisd in subordination to the principle which secures the inviolability of contracts."   The same doctrine is declared in *Mobile v. Watson, supra* (and many cases there cited) where it is said: "But when (municipal corporations) empowered to take stock in or otherwise aid a railroad company and they isue their bonds in payment of the stock taken or to carry out any other authorized contract in aid of the railroad company, they are to that extent to be deemed private corporations, and their obligations are secured by all the guarantees which protect the engagements of private individuals.   Therefore, the remedies for the enforcement of such obligations assumed by a municipal corporation, which existed when the contract was made, must be left unimpaired by the Legislature; or if they are changed, a substantial equivalent must be provided. Where the resource for the payment of the bonds of a municipal corporation is the power of taxation existing when the bonds were

issued, any law which withdraws or limits the taxing power and leaves no adequate means for the payment of the bonds, is forbidden by the Constitution of the United States, and is null and void."

Now, to apply the law as we have found it to be to the particulars of the case before us:   Under what circumstances did the debt of the plaintiff against the town of Fayetteville arise? and what were the means provided at the time the debt was contractd for its payment?   The Western Railroad was incorporated by the General Assembly of North Carolina, at its session of 1852, by Chapter 147.   By an Act passed at the same session (Chapter 207), the town of Fayetteville was authorized to subscribe for shares of stock in that railroad company, the shares of stock to be held for the use and benefit of the town.   To meet the payment of any subscriptions that might be made, the town was authorized to issue and sell bonds bearing interest, and by Section 4, to levy and collect taxes for the payment yearly of the interest, and to create a sinking fund for the ultimate payment of the debt, and to invest from time to time, in profitable stock, the surplus of thier taxes to meet the maturity of the bonds.   An election was held according to the provisions of the Act, and a majority of the qualified voters cast their ballots for "subscription," and the bonds were issued.   On the 22nd of March, 1875, the General Assembly of that year passed an Act, Ch. 248, in which the town of Fayetteville was authorized to fund the bonded debt of the town, contracted for stock of the Western Railroad Company by virtue of the Act of 1852.   The debt was funded, and the coupons on which this suit was brought are clipped from the bonds issued by the town under the funding Act of 1875.   It appears then from the above statement of the facts that the bonds were originally issued by the town with the express provision in the Act which authorized

their issue (1852) that the town authorities were to levy and collect an annual tax upon the property and polls within the town, with which to pay the interest (coupons), and in the same way to raise a sinking fund to pay the bonds at maturity. The Act of 1875, authorizing the town to fund the original bonds, provided for the payment of the new bonds in the same manner and to the like extent as were the old bonds.

It follows then from the conclusion at which we have arrived, aided as we have been by the decisions of other Courts, that the Act of 1852 was the basis of a contract between the holders of the bonds which were issued to buy the stock of the Western Railroad Company, and the town of Fayetteville, by which the town authorities were to levy a tax upon the property and polls of the town, with which to pay the coupons, and also to provide a sinking fund with which to pay the bonds at maturity; that the coupons upon which this suit was brought were clipped from the bonds issued under the Act of 1875, under which the old bonds were funded; that the new bonds are of the same nature as the old bonds and were invested with the same security for their payment; that these bonds are still in force, and that the obligation to pay the same together with the coupons (the interest) rests upon the City of Fayetteville as the legal successor of the town of Fayetteville.

The provisions in the Act of 1893 incorporating the City of Fayetteville, which prohibit the levying of taxes for the payment of the bonds by the new corporation, are invalid and can not be regarded. In support of this position we refer to the case of *Mobile v. Watson, supra.* "All laws passed since the making of the contract whose purpose or effect is to take from the City of Mobile, or its successor, the power to levy the tax and pay the bonds, are invalid and ineffectual, and will be disregarded; to *Wolf v. New Orleans, supra,* where the

·Court said: "The Courts therefore treating as invalid and void the legislation abrogating or restricting the power of taxation delegated to the municipality upon the faith of which contracts were made with her, and upon the continuance of which alone they can be enforced, can proceed, and by mandamus compel, at the instance of parties interested, the exercise of that power as if no legislation had ever been attempted."

The conclusion at which we have arrived as to the liability of the city of Fayetteville, the new corporation, for the debts of the town of Fayetteville, the old corporation, makes it necessary for us to discuss and decide the question of the statute of limitations set up by the defendant in the answer, as a bar to the action. The coupons being for interest, to become due on the bonds, are a part of the bonds and partake of their nature, and the Statute of Limitations therefore which applies to the bonds themselves must be the same statute which is applicable to the coupons. The bonds are specialties, and so are the coupons. The ten years statute begins to run against coupons from the time of their maturity. Am. and Eng. Enc. Vol. 8, p. 18; *Clark v. Iowa City,* 20 Wall., 583, *Amy v. Dubuque,* 98 U. S., 470; *Koshkorig v. Burton,* 104 U. S., 668. The coupons in this case became due in 1881; the charter of the town of Fayetteville was repealed in October, 1881; the city of Fayetteville was incorporated in March, 1893, and this action was brought in 1894. If the time which elapsed between the repeal of the charter of the town of Fayetteville and the Act of 1893 which incorporated the city of Fayetteville, and during which time the territory was a taxing district, is to be counted, then the Statute of Limitations (ten years) will be a bar to the action; if that time is not to be counted, then the statute will not be a bar to the action. We ·are of the opinion that the time should not be counted. In *Lilly v. Taylor,* 88 N. C., 489, it was held that as a result of

the repeal of the charter of Fayetteville (and that too after
the Court had taken official knowledge of the Act of 1883
creating the taxing district), the creditors of the town had
had all remedies for coercing the payment of their debts taken
from them; and by the reference of the court to the case of
*Merriwether v. Garrett, supra,* as decisive of the case before
them, the Court could have had no other idea than that the
creation of the taxing district did not in any way or for any ·
purpose revive the old corporation.

But the defendant insists that the Statute of Limitations
began to run against the coupons in 1881 when they fell due,
and that more than ten years elapsed between that time and
the time when this action was begun; and that when the
statute once begins to run, no subsequent happening or event
can obstruct its course.   That, as a general proposition of
law, is true, and we have numerous decided cases in our own
reports which lay down that rule in the clearest language. In
*Hamilton v. Shepperd,* 7 N. C., 115, the plaintiff insisted that
his action was not barred because there was fraud in the con-
duct of the defendant, but the Court said : "But it (the matter
on which the plaintiff relied to take his case out of the opera-
tion of the statute) is not in the Act, nor is there anything like
it, and we cannot put it there.   It is neither in its letter nor
spirit."   In *Vance v. Granger's Ex.,* 1 N. C., 204, the Court
said :   "The Act of Limitation would amount to a general and
positive bar were not certain exceptions contained in the pro-
viso; we cannot add to these others which the Legislature has
omitted.'   But we are satisfied that when these decisions
were made the court had in mind only cases where the ability
to bring suit on the part of the plaintiff, or some one for him,
had not been taken away by law—by statute—and where the
Courts were open for the hearing of all matters of which they
had jurisdiction.   Statutes of Limitation are founded on the
idea that one who has a cause of action will undertake to

enforce it within a reasonable time if the courts are open to him. To prevent confusion and to produce certainty as to what is reasonable time, the law (the Statutes of Limitation) has fixed the periods within which actions must be brought. These views are so well expressed in the case of *United States v. Wiley,* 78 U. S., 508, that we cannot do better than quote a part of the opinion in that case: "But it is the loss of the ability to sue, rather than the loss of the right, that stops the running of the statute. The inability may arise from a suspension of right, or from the closing of the courts; but, whatever the original cause, the proximate and operative reason is that the claimant is deprived of the power to institute his suit. Statutes of Limitation are indeed statutes of repose. They are enacted upon the presumption that one having a well founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue. Such reasonable time is therefore defined and allowed. But the basis of the presumption is gone whenever the ability to resort to the courts has been taken away. In such a case the creditor has not the time within which to bring his suit that the statute contemplated he should have." This view of the law is strengthened by what was said by the Court in *Harger v. Abbott,* 73 U. S., 532: "They (the Statutes of Limitation) proceed also upon the presumption that claims are extinguished whenever they are not litigated in the proper forum within the prescribed priod, and they take away all solid ground of complaint because they rest on the negligence or laches of the party himself." These cases were approved in *Braur v. Sauerwin,* 77 U. S., 218, where it was said: "Similar decisions (referring to *Harger v. Abbott, supra,* have been made in the State Courts. They all rest on the ground that the creditor has been disabled to sue by a superior power, without any default of his own, and therefore that none of the reasons, which

induced the enactments of the statutes, apply to his case; that unless the statutes cease to run during the continuance of the supervening disability, he is deprived of a portion of the time within which the law contemplated he might sue."

It is unnecessary to consider at any length the effect of the judgment which was entered up against the town of Fayetteville after the charter of the town of Fayetteville had been repealed. For the purposes of this case we will treat it as void, as was contended by the defendant. The second cause of action founded on the coupons is good.

In conclusion we are of the opinion that the city of Fayetteville, the new corporation, is the successor of the town of Fayetteville, the old corporation; that the debts of the old corporation were not extinguished by the repeal of its charter; that the same power to assess and collect taxes to pay the plaintiff's claim, which existed at the time that the bonds were issued, is in the new corporation and has not been affected by the provision in the Act incorporating the City of Fayetteville, which prohibits the collection of taxes for the payment of claims like those of the plaintiff; that the Statute of Limitations did not run during the time when the territory and inhabitants of the territory formerly embraced in the town of Fayetteville was a taxing district, and therefore is not a bar to this action; and that the plaintiff is entitled to a peremptory mandamus requiring the proper authorities of the City of Fayetteville to levy and collect taxes upon property and polls within the city, with which to pay the plaintiff's claim.

Affirmed.