WAYNE COUNTY DRAINAGE DISTRICT, No. 1, v. B. A. PARKS ET AL.

(Filed 15 December, 1915.)

1. **Drainage Districts—Reports—Exceptions—Appeal—Bond Issues—Statutes.**

  Under the Drainage Act, Public Laws 1909, ch. 442, appeals are separately provided for under sec. 8, when the drainage district has been laid off, and under sec. 17, when the final act is passed upon; and where the complaining owner of land in the district has not entered an exception under either of these two sections, as the statute provides, and bonds have been duly issued on the lands of the district for drainage purposes, and thereafter application has been made by the commissioners for the

issuance of additional bonds, in the further proceedings he may not be permitted to go back and change the formation of the district and the classification and assessments already made, by attacking the reports of the engineers and viewers, and withdraw a large part of his lands from the district theretofore formed.

**2. Same—Purchasers with Notice.**

Where the owner of land in a drainage district has duly excepted under sec. 8, ch. 442, Public Laws 1909, and again under sec. 17 of said chapter, and appealed, the purchaser of bonds issued by the district takes with notice of the rights of the complaining party so excepting, and .acquires the bonds subject thereto.

**3. Same—Reference—Notice—Invalid—Reports.**

Where the complaining party has duly excepted and appealed from the manner of forming a drainage district under ch. 442, Public Laws 1909, and from the assessments made thereunder, and, with the consent of the parties, the court has referred the controverted matter to three referees, one each to be selected by the parties, and the other by the referees selected, a report made by two of them without notifying the other, and in his absence, is not valid, though the reference provides that the report of any two of them should be so, the intent of such provision being that the third be notified, and should he fail or refuse to attend, the others may not be prohibited from making it.

**4. Reference—Findings—Evidence—Confirmation of Reports—Consideration by Court—Appeal and Error.**

Findings of fact by the referee of the court, supported by evidence, when the report and evidence have been considered by the judge and confirmed, are not reviewable on appeal; and exceptions that the court had not given proper consideration to the report are untenable, it appearing from the judgment that the judge had done so.

**5. Drainage District—Reports—Exceptions—Appealable Matters—Statutes.**

Sec. 17, ch. 442, Public Laws 1909, providing for an appeal upon exception to the final report by an owner of lands in a drainage district laid off under the provisions of the statute necessarily refers to the formation of the district and the assessments of the lands embraced in it.

**6. Reference—Scope of Inquiry—Drainage Districts—Conformation and Assessments—Exceptions—Appeal and Error.**

Where, by consent of the parties to an action, the court has ordered a reference for hearing and determining "all matters in controversy," and the controversy has arisen upon exceptions taken by a landowner to the final report on the plan and assessments made in forming a drainage district (ch. 442, Public Laws 1909, sec. 17), the complaining party may not successfully except to the authority of the referee in passing upon questions therein arising which have been referred to them.

APPEAL by plaintiffs from *Bond, J.,* at May Term, 1915, of WAYNE.

Special proceeding before the clerk, which was removed to the Superior Court of Wayne, at term, by appeal and order of the clerk, and there heard on exceptions of the plaintiff.

This is a proceeding to establish a drainage district in Wayne County, to be known as No. 1. It seems from the record that the proceedings for that purpose instituted before the clerk were regularly conducted.

The preliminary report under Public Laws 1909, ch. 442, secs. 3, 4, 5, and 6, was filed and considered by the clerk, and the report establishing the district and fixing its boundaries was, after due notice to the parties, confirmed on 26 October, 1911, and, as required by the statute, the matter was recommitted to the engineer and viewers who made the report, for the purpose of having a complete survey of the district, with maps and plans prepared by them and filed with the clerk. This final report was returned and filed on 20 December, 1911, and the same was ordered to be heard on 18 January, 1912, after due notice to the parties, which was given. No exceptions were filed to the confirmation of the preliminary report, nor was any appeal taken therefrom, under sec. 8 of the act, nor was there any exception to the confirmation of the final report or any appeal therefrom by J. W. Bizzell, and none at all, except by J. S. Wooten, Mrs. Daisy Smith, Mrs. E. W. Sanderlin and Mrs. Henrietta Wooten, who filed formal written exceptions and appealed from the order of the clerk to the Superior Court at term for a trial by jury. When the preliminary report was confirmed and a further report ordered, for the purposes indicated in the statute, and when commissioners were duly appointed and the final report confirmed, the first installment of bonds to defray the cost of the drainage scheme were issued to the amount of $23,489.30, the sum of $2,810.70 having been paid in by certain landowners. It was afterwards found that this was not sufficient and the plaintiff applied, by petition, to the clerk, for an additional issue of $6,575, which was ordered by the clerk.

J. W. Bizzell answered the petition and amended petition, and in his answer he objected to the classification in the final report of the engineer and viewers, and asked that the number of acres of his land included in the formation of the district be reduced from fifty-five and four-tenths to thirty-four acres, the latter being the number of acres really embraced by the boundaries of the district. He also alleged a great disproportion between the assessment upon his land and the benefit derived from the drainage. The clerk reduced his land thereby to thirty-two and one-half acres.

J. S. Wooten and others above named also filed an answer to the petition for an additional issue of bonds.

The petitioners excepted to the order of the clerk in regard to the reduction in acreage of J. W. Bizzell's land, and to the allowance of an answer by J. S. Wooten and others, and the whole matter was taken before the Superior Court by appeal, and, coming on to be heard there, the cause was referred, by consent of the parties, to W. D. Grant, Fred S. Isler and J. K. Warner (Henry A. Grady afterwards substituted for him), for the trial and determination of all the matters in controversy. The referees filed their report, changing the classification as to the lands of Mrs. E. W. Sanderlin and Mrs. Kate Wooten and directing a reassess-

ment, and also the issue of the additional bonds for $6,575 as asked for by the plaintiff, in affirmance of the clerk's action. They overruled the exception of plaintiff to the order of the clerk in respect to the J. W. Bizzell land, and they tendered a judgment in conformity with their findings of fact and conclusions of law. The plaintiff filed several exceptions to this report, from which the referee W. D. Grant had dissented by a formal report of his own, and the entire matter, orders of the clerk, report of referees and exceptions thereto, came on to be finally heard before Hon. W. M. Bond, judge presiding, at May Term, 1915, when "it was admitted in open court by the attorneys of plaintiff that there was ample evidence before the referees to sustain their report." The case having been fully argued and duly considered by the court, it was adjudged that all of the exceptions be overruled, and the judgment of the clerk and the report of the referees were in all respects approved and confirmed, and judgment was accordingly entered and the costs and allowances taxed as therein provided. Plaintiffs excepted and appealed to this Court.

*Dortch & Barham, W. W. Pierce, Guion & Guion for plaintiff.*
*W. S. O'B. Robinson, Rouse & Land for Wooten and others.*
*Langston, Allen & Taylor for defendant Bizzell.*

WALKER, J., after stating the case: The statutes under which this proceeding was brought and conducted to final judgment seem to provide for an appeal at two stages thereof, one, under Public Laws of 1909, ch. 442, sec. 8, when the drainage district has been laid off, and another, under sec. 17, when the time for an adjudication upon the final report of the viewers has arrived. J. W. Bizzell did not appear and except to either of these reports, the preliminary or the final, and the court, therefore, erred in allowing him to do so upon the application of the plaintiff for an additional issue of bonds. He could except then and be heard only as to any matters involved in the petition for the additional issue of bonds which affected his interests, but he cannot be permitted to go back of this and change the formation of the district and the classification and assessments already made, by attacking the reports of the engineer and viewers, and withdrawing a large part of his land from the district, especially after bonds had been issued on the basis of those reports and their confirmation, and sold to innocent holders. It would be unjust to them, if not illegal, as it would greatly impair their security, there being nothing substituted for the land thus taken out of the district, to preserve the value of that security. *Broadfoot v. Fayetteville,* 124 N. C., 478; *McCless v. Meekins,* 117 N. C., 35. But whether or no the bondholders could object, if they were parties, upon the ground that their rights would be, in a legal sense, impaired, it is sufficient to say that it would be unjust to them, and there is nothing

in the statutes which allows an exception as to matters already settled at such a late stage in the proceedings. This view is sustained by the following decisions on similar statutes: *Zeigler v. Gilliatt,* 105 N. E., 707; *Trigger v. Drainage District,* 193 Ill., 230; *Hatcher v. Supervisors,* 145 N. W., 12; *Allen v. Drainage District,* 64 So., 418.

Exceptions and appeals are provided for in the statutes, and the time fixed when they must be noted. As J. W. Bizzell did not appear and except at that time, it must be assumed that he was satisfied with what had been done, and waived his right. He can file exceptions to any action taken in regard to the additional issue of bonds, but not to the former proceedings, which are past and closed as to him. There was error, therefore, in allowing him to answer and except as he did. This ruling, though, does not apply to J. S. Wooten and associates, as they excepted when the final report was filed and appealed under sec. 17 of the statute, which was allowable thereunder as that section is construed in *Shelton v. White,* 163 N. C., 90. The first bonds were issued after the exceptions were filed and the appeal taken, and, therefore, they were purchased with full knowledge of the rights of these parties in the further progress of the case. The latter, for this reason, were entitled to be heard, as they had excepted and appealed and properly reserved their rights from time to time.

But we think there was error in confirming the report of the referees without first passing upon the serious question of fact as to whether there has been any legal report from them. One of the referees, W. D. Grant, filed what is called a "minority report," in which he agrees with some of the findings of his other two associates, and dissents from others, and then states that the referees met and examined the premises, and, after hearing and considering the evidence, they failed to agree, no two of them being able to do so, and that then they adjourned with the understanding that they would meet again for further discussion of the matters and try to reach a decision, but no such meeting was ever held, and he knew nothing of any meeting, if there was such, or of any agreement between the other two referees, until a report they had already signed was presented to him by one of them, and he refused his assent to it and did not sign it. If this be true—and the court should have ascertained and decided whether or no it was true—there was no valid report made by the referees. The law contemplates that they shall deliberate together and as a body, and not that two of them shall do so, apart from the third one, and this is what is required by the terms of the consent order of reference, as we construe it, the cause having been "referred to the aforesaid *three* referees for trial and determination according to law."

It is true that there is provision in the order of reference that J. K. Warren (whose place was taken by Mr. Grady with the same powers)

and either one of the other referees might proceed to hear and determine the cause in the absence of the third referee; but we think it perfectly clear that what was intended, and what is expressed in this clause, is that the referees should have notice of any proposed meeting, and if any one of them, other than Mr. Warren or Mr. Grady, failed to come, the remaining two could proceed to execute the order without him. This was done to prevent any one of the referees from defeating the object of the reference by willfully absenting himself after receiving notice of a meeting. It could not mean that two of the referees might ignore the third and take the matter into their own hands. This would be an unwarranted construction of the order, as the reference was to "all three of them." If it is construed as we have indicated it would be a reasonable provision, but if given the other meaning it would be very unreasonable, and the reference would practically be only to two of them. We cannot think that the court and the parties intended to give this arbitrary discretion to two of the referees. It is to be borne in mind, also, that each of the parties selected one of the referees, and the object in doing so would be defeated if any other meaning were given to the order than the one adopted by us.

By two of them meeting together and virtually expelling the third, an obvious advantage would accrue to the party whose appointee was associated with the umpire in hearing the case and making the report. Besides, when these referees adjourned their last meeting it was done with the distinct understanding that *they* should meet again, that is, all of them, and try to decide the case, and this understanding would be disappointed if two of them were allowed to act to the exclusion of the third one. The court should, therefore, have found the facts in regard to the manner of holding the meeting of the referees, and should not have confirmed the report until this was done and it had been ascertained that the absent referee had been duly notified of the meeting and stayed away. If he was not notified and took no part in the meeting the report was an invalid act. For this reason the order of confirmation will be set aside. But it may be well to consider some other questions raised, as they may be presented again.

The exceptions to the report based on other grounds are not tenable. The two referees have found the facts upon evidence, and their findings have been approved and adopted by the court. In such a case we do not review the findings here. *Mirror Co. v. Casualty Co.,* 153 N. C., 373; *Bailey v. Hopkins,* 152 N. C., 748; *Williamson v. Bitting,* 159 N. C., 321. There is no ground for the exception that the judge did not consider the evidence and questions involved before signing the judgment, as the judgment itself states to the contrary. *Thompson v. Smith,* 156 N. C., 345, does not, therefore, apply.

If the Superior Court, with the aid of a jury, or referees, appointed by consent of the parties, cannot change the final report of the viewers, we do not see why the right to except thereto and appeal to that court was given in sec. 17 of the statute. Without such a power an appeal would be nugatory. There is nothing to review by an appeal except the formation of the district and the assessment of the lands embraced within it. When an assessment roll is prepared and the final report is confirmed without any appeal therefrom the method of reclassification, as stated in the plaintiff's brief, would, of course, be the only one by which a change in the reported classification could be made. It is not to be overlooked that the terms of the order of reference were very broad and all-inclusive, submitting to the referees for hearing and determination "all matters in controversy" arising upon the exceptions, and this embraced every question that they have tried and decided. We do not understand how appellants can except to the reference of certain questions, such, for instance, as the one mentioned in their fourth exception, when they are the questions in controversy, and they consented to the reference. It was the reference of the parties, made at their request and by their consent with the sanction of the court, and was intended to settle every disputed matter. Besides, J. S. Wooten and his copetitioners had duly excepted and appealed, and their right to raise the questions which were made by their answer to the petition was thereby preserved, and it will be found on a comparison of their exceptions with their answers that they practically present the same questions, except as the answer refers to other questions germane only to the application for an issue of additional bonds.

The referees found the facts against the appellants, it being admitted that there was evidence to support those findings, and the judgment would naturally follow from them, if the report is found to be a valid one.

After a careful review of the entire record we have reached the conclusion that there was error as to the J. W. Bizzell matter, except in the particular we have stated, and his right to be heard should be confined to the application for a second issue of bonds. There was also error in confirming the report until the validity of the action by the two referees and of their report was first ascertained, and, on account of this error, the court below will set aside the said order and proceed to determine upon the validity of the report, and thereafter further proceed agreeably to law.