D. W. MITCHEM v. GASTON COUNTY DRAINAGE COMMISSION ET AL.

(Filed 23 November, 1921.)

**1. Drainage District—Discretionary Powers—Statutes—Assessments.**

The Legislature, in authorizing the establishment of a drainage district, may very largely commit to the commissioners the exercise of their judgment as to what should be done in carrying out the general provisions specified by the statute, and the special act of the Legislature creating the Gaston County Drainage Commission, ch. 427, Public-Local Laws of 1911, thus construed, does not relieve a landowner therein from paying his authorized assessments for benefits solely because the commission failed to strictly and literally divide the lands into the number of classes therein set out.

**2. Same—Meetings—Notice—Exceptions—Actions—Injunction.**

Where a drainage district has been formed under the provisions of statute, a landowner therein may not attend a meeting regularly had by the commissioners for the purpose of assessing the landowners for benefits, etc., make no objection or take no exception to that placed upon his own land, or fail to proceed in the manner prescribed by the statute, and instead collaterally, by injunction, restrain the collection of these assessments by sheriff's sale; and this applies to his grantee, who knew that the lands were situate within the district and subject to the assessments. *Mabry v. Drainage District*, 163 N. C., 24, cited and applied.

**3. Same—Appearance—Waiver.**

Where the owner of land in a drainage district, formed under the provisions of statute, appears at a meeting of the commissioners held for the purpose, and is silent, making no objection or exception to the assessment imposed upon his land, the question as to whether he had been sufficiently served with notice of the meeting becomes immaterial, his appearance being construed as a waiver thereof, or rather as dispensing with formal notice.

**4. Drainage Districts—Proceedings—Presumptions—Notice.**

The presumption is in favor of the regularity of the official proceedings of the commissioners of a drainage district, and applies as to the sufficiency of notice to a landowner within the district of a meeting duly had to assess such owners according to benefits received from the improvements therein.

**5. Same—Waiver—Assessments—Benefits.**

The question as to whether an owner of land within a drainage district has realized the benefits anticipated is eliminated when there is the establishment of the district upon the report; and where such owner remains silent or makes no objection or exception at the proper time as to the proceedings of the board, his silence is a waiver of any right he may have therein had, and the independent remedy by injunction is not open to him.

**6. Drainage Districts—Benefits—Formation of District—Presumptions.**

The claim of the plaintiff, an owner of land within a drainage district established by authority of statute, that his land had received no benefit

is held untenable upon the record in this case, as he is concluded by the report and judgment of the commissioners, to which no exception was taken at the proper time.

APPEAL by plaintiff from *Harding, J.,* at the April Term, 1921, of GASTON.

This action was brought by the plaintiff to restrain the collection of drainage assessments levied by the Gaston County Drainage Commission No. 1, of Gaston County, N. C., against certain lands within such drainage district now owned by the plaintiff. This drainage commission was created by a special act of the Legislature, chapter 427, Public Local Laws of 1911.

The drainage district was established in 1912 in pursuance of such act, and at the time of its establishment A. C. Stroup was the owner of the forty-three acres of land in such district now owned by this plaintiff. Stroup owned the lands when they were classified and when assessments were first levied, and he attended the meetings of the commission, and was present at the time the commission sat as a body to hear and determine complaints from the landowners, as provided for in the act.

Stroup did not except to the findings of the commission, or to the establishment of the district with said forty-three acres included within it, nor to any action of the commission the day it sat as a body to hear and determine complaints, fix the classifications and rate and the amount of assessments, nor did he except or take an appeal from any of the actions of the commission.

Plaintiff Mitchem afterwards purchased said forty-three acres of land with full knowledge that the same was included within the drainage district, and that assessments had been levied against the lands. Since plaintiff has owned the lands, other assessments have been levied, and plaintiff has not at any time excepted to or appealed from any of the orders of the commission. He has not paid any of the assessments levied upon the lands. After he had constantly refused to pay, and in order to force collection of the assessments, the lands were advertised for sale by the tax collector. Plaintiff, pending the date of sale, brought this action and obtained a temporary restraining order, which was dissolved at the hearing before Judge Bryson. This action came on for trial before Harding, J., and a jury, at April Term, 1921, when, at the close of plaintiff's evidence, and upon motion of defendant, the court rendered judgment as of nonsuit, from which the plaintiff appealed to this Court.

*Woltz & Woltz, and Mangum & Denny for plaintiff.*
*Carpenter & Carpenter for defendant.*

WALKER, J., after stating the case: The plaintiff in his brief has abandoned all of the irregularities complained of in his complaint except two, which briefly stated are: (1) The commission failed to divide the land into five classes, and (2) it abandoned the dredging of the stream.

In order that we may intelligently present this matter, we first direct attention to the act of the Legislature creating this drainage commission, Public-Local Laws 1911, ch. 427. It is apparent from a perusal of this act the Legislature realized that many details of the drainage scheme contemplated by it would have to be threshed out by the local drainage commission. The Legislature outlined the general purpose, but very properly left the practical development and execution of the same to the commission, thereby committing the administration of the act to the sound judgment and discretion of it. We give here a few excerpts from the act which show this to be true:

"Section 1. They shall have power generally to do whatever may be necessary to be done in order to make effectual the drainage of Big Long Creek," etc.

"Sec. 2. Shall have authority in the discretion of the said commission" to do certain things therein mentioned.

"Sec. 3. The commission shall make a just estimate of all of the lands along Big Long Creek and its tributaries within Gaston County and within the terminal points mentioned and designated in section one that will in their judgment be benefited, either generally or specially.

"Sec. 8. This section also refers to the drainage commission, as to what things it may do, and (among them) 'it may make such changes as it may deem proper.'

"Sec. 10 (the latter portion). That every privilege, power and right to carry out the provisions of this act are granted to said commission."

We might cite other provisions of the act which tend to show that it was the intention of the Legislature to give the commission authority to administer the various provisions, in accordance with its best judgment and discretion, but we deem it unnecessary to do so. It seems clear, we think, that the Legislature was providing for the commission merely a basis upon which to work, but not tying its hands with any prescribed formula or with any set of rules.

The principal question for consideration is whether the fact that the drainage commission did not classify the lands in strict, and even literal, compliance with the act, renders their entire action void and of no effect as to the plaintiff's interest therein. Counsel for him have argued that he was not bound by the proceedings of the commissioners, as he was not properly or legally served with notice, but we do not consider it

33—182

necessary to decide whether or not he was served with formal process or notice, as we find in the record ample evidence to the effect that the owner was actually present when the assessments were made, and that he made no objection to them, and noted no exception, nor did he attempt, in any proper way, to have them reviewed. All this is to be found in the testimony of plaintiff's witnesses, giving him the most favorable and allowable construction of it, and it further appears that he took no such position at the hearing as he now insists on, that he had not received the proper formal notice of the hearing, nor did he ask for further time in order that he might be better prepared with evidence and otherwise to protect or defend his interests. The case of *Newby & White v. Drainage District,* 163 N. C., 24, seems to answer all the objections made in this case, and the purport of that decision is thus substantially stated or summarized in the head-note: A drainage district laid off under the provisions of the act of 1909 is a *quasi*-municipal corporation, partaking to some extent of the character of a governmental agency, and neither its existence nor the regularity of its proceedings can be collaterally impeached in an action for trespass for cutting down trees in constructing the drainage canal. The Drainage Act of 1909 affords ample opportunity and machinery for the landowner in a district laid off thereunder to assert his rights, including those of damages to his land, with the right of appeal to the Superior Court; and he is concluded under the express provision of the statute by order of the court confirming the final report of the viewers, unless he has preserved his rights in accordance with the statutory requirements. The pendency of a proceeding to lay off a drainage district under the provisions of the act of 1909 is notice as to all the lands embraced in the district, and the grantees thereof are bound by the statutory requirements as to the procedure to recover damages to the lands, as were their grantors who were parties to the proceedings and who owned the lands at that time.

The plaintiff, testifying in his own behalf, confessed that he could not state positively whether he had received formal notice, and also stated that he did not know whether the notice was written or merely verbal; but he was there and made no protest against any failure to formally notify him. Mr. Stone testified that plaintiff's assignor, Mr. Stroup, who was then the owner of the land, was at the meeting when the question of assessments and others matters were discussed and settled, and it appears that he apparently was satisfied with what was done. A man who is silent when he should speak, will not be heard when common fairness and justice requires that he should be silent. There is supposed to be a seasonable time for all things. The world in its development and progress towards higher and better conditions cannot be

stopped, for those who have lagged behind to be heard on a question so vitally affecting the public good, and especially is this true of judicial proceedings where the complainant has had his day in court, or a fair opportunity to be heard, if he has any meritorious ground of objection to what is done or about to be done. The law comes to the 'aid of the vigilant and not to those who sleep upon their rights.

We said in *Drainage Commission v. Parks,* 170 N. C., 435-438: The statutes under which this proceeding was brought and conducted to final judgment seem to provide for an appeal at two stages thereof, one under Public Laws of 1909, ch. 442, sec. 8, when the drainage district has been laid off, and another under sec. 17, when the time for an adjudication upon the final report of the viewers has arrived. The complainant did not appear and except to either of these reports, the preliminary or the final, and the court therefore erred in allowing him to do so upon the application of the plaintiff for an additional issue of bonds. He could except then and be heard only as to any matters involved in the petition for the additional issue of bonds which affected his interests, but he cannot be permitted to go back of this and change the formation of the district and the classification and assessments already made, by attacking the reports of the engineer and viewers, and withdrawing a large part of his land from the district, especially after bonds had been issued on the basis of those reports and their confirmation and sold to innocent holders. It would be unjust to them, if not illegal, as it would greatly impair their security, there being nothing substituted for the land thus taken out of the district to preserve the value of that security. *Broad-foot v. Fayetteville,* 124 N. C., 478; *McCless v. Meekins,* 117 N. C., 35. But whether or no the bondholders could object, if they were parties, upon the ground that their rights would be, in a legal sense, impaired, it is sufficient to say that it would be unjust to them, and there is nothing in the statutes which allows an exception as to matters already settled at such a stage in the proceedings. This view is sustained by the following decisions on similar statutes, citing *Zeigler v. Gilliatt,* 105 N. E., 707; *Trigger v. Drainage District,* 193 Ill., 230; *Hatcher v. Supervisors,* 145 N. W., 12; *Allen v. Drainage District,* 64 So., 418.

In the more recent case of *Gibbs v. Commissioners of Mattamuskeet Drainage District,* 175 N. C., 5, the Court, by the *Chief Justice,* states and applies these principles in such way as to leave not a vestige of ground upon which plaintiff can stand and successfully defend his position. And, in the case of *Carter v. Board of Drainage Commissioners* (of the same district), 156 N. C., 183, the same principle is asserted, and it was also held, as it was in the *Gibbs case, supra,* that works of this character being of a *quasi*-public nature, will not be interfered

with, that is, stopped or delayed, by collateral attacks of those who have lost their right to be heard in the proper way by inexcusable laches, and an injunction, which is the relief sought in this proceedings, was denied. In the more recent case of *Mann v. Mann*, 176 N. C., 353, which was a motion in the original cause where Mattamuskeet Lake District was established *(Carter v. Commissioners, supra)*, this Court reviewed the same subject and the authorities somewhat extensively, and arrived at the same conclusion as formerly in the numerous cases decided by it up to that time, and held, as appears from a part of the syllabus, that a final judgment rendered, in due course, in proceedings to establish a drainage district may not be amended at a subsequent term of the court to supply an alleged omission to limit the assessments to be made on the land in accordance with that stated in the petition, there being nothing to show that the judgment was not recorded by the clerk as actually given to him, or that it had been omitted by inadvertence of the judge or the mistake of any one. The correction of a final judgment for error rendered by a court having jurisdiction over the parties and subject-matter is by appeal, and it may not be collaterally attacked except for fraud, collusion, etc., or when it is void, and its validity appears upon its face, or otherwise in some cases. Where a final judgment has been rendered between the same parties on the same subject-matter, it is not essential that a later action or proceeding be identical in form for it to estop the parties therein, as *res judicata*. One who has been defeated on the merits in an action at law cannot afterwards resort to a bill in equity upon the same facts for the same redress. Upon this motion, made in the cause to amend a final judgment in proceedings to form a drainage district so as to restrict the amount of the assessments made upon the lands, and especially after the issuance of bonds thereon, the principle is applied that the one of two innocent persons must suffer whose conduct has occasioned the loss. Where by motion at a subsequent term of the court a final judgment entered in proceedings to establish a drainage district, under the provisions of a statute, is sought to be amended so as to include a provision limiting the amount of assessments to be made on the lands, the mere failure of the parties at the time to request that the provision be inserted in the judgment does not alone entitle them to the relief sought. A provision in the petition limiting the amount of assessments to be made on lands within a drainage district being formed under the provisions of the statute, which was not inserted in the final judgment rendered in due course, may not at a subsequent term be supplied by amendment, being also contrary to the statutory provisions and invalid.

Ruling Case Law, Vol. 9, p. 637, says that the presumption in favor of the regularity of official proceedings puts the burden on the landowner who claims that proper notice of the proceedings has not been given, and even in cases in which notice is necessary, any subsequent joinder in the proceedings will constitute a waiver. There is no evidence tending to show that either Stroup or the plaintiff himself took proper advantage at any time of the remedies provided in the act, and it is too late now to hear him. *White v. Lane,* 153 N. C., 16.

In *Spencer v. Wills,* 179 N. C., 177, it was said that we have held in sundry cases appertaining to the same subject, that parties to proceedings of this character, and in reference to their lands situated within the district, are estopped from questioning, by independent suit, the judgment establishing the district, or the validity and amount of the assessments made in the cause or the matter of burdens and benefits affecting the property. These and other like rulings must be challenged, at the proper time, in the course of the proceedings, and unless objection is successfully maintained, the parties are concluded. Also the Court said in the case of *Drainage District v. Parks, supra,* 439, that exceptions and appeals are provided for in the statutes, and the time fixed when they must be noted. As complainant did not appear, and *except* at the proper time, it must be assumed that he was satisfied with what had been done and waived his right. He can file exceptions to any action taken in regard to new matter, but not to the former proceedings, which are not open to him, but past and closed forever. *Griffin v. Comrs.,* 169 N. C., 642. We further said that this is a question (in speaking of benefits anticipated and not realized) that was settled at the time the report was adopted and the district was established, and may not be questioned in a proceeding (injunction) of this character.

It was urged, in the able argument of Mr. Mangum, that neither Stroup, the original owner of the land, nor the plaintiff, who is his assignee, had received any benefit from the drainage, but we think, upon a close study of the record, that it will appear otherwise. But, if it does not, we held in *Griffin v. Comrs., supra,* that the collection (of assessments) should not be stayed because the scheme has not afforded to a landowner the drainage he had anticipated.

The claim of plaintiff that no work has been done on his land which facilitates its drainage, is clearly untenable. It appears from the testimony that a gorge below his lands has been removed and work in removing a large shoal has been also done, and perhaps more even than that much. Whether the work actually done was as beneficial as plaintiff, or his predecessor in title anticipated, is a matter not before us, as it was settled at the hearing before the commissioners, when the

report was adopted and the district established, and may not now be questioned, as we held in *Griffin v. Comrs., supra*. The outcome of these enterprises cannot be absolutely predicted, and they may even result in the abandonment of the project, but probable feasibility has been shown, and the district in consequence organized, and preliminary work must then be done and its cost must be met. It is work undertaken by the district, and in the present case the district was created upon an adequate showing of basis, and it is not disputed that the plaintiffs received the notice to which they were entitled, or were actually present, and were thus apprised of whatever legal consequences attached the formation of the district with their lands in it. The same was said in *Houck v. Little River Drainage District*, 239 U. S., 254. There was testimony for plaintiff that he attended the meetings of the drainage commissioners, and that he did not take any action about what was done there until this suit was commenced.

The plaintiff's reliance upon *Spencer v. Wills, supra*, to show that the landowner may bring suit for damages when there has been a substantial departure from the scheme authorized by the commissioners, is without avail to him, as the principle does not apply to this case, and that case expressly recognizes and supports the rule which underlies our present decision. The case of *County Collector v. C. I. Traction Co.*, 108 N. E. (Ill.), 687, is manifestly not applicable, as there was a classification here; and if it was erroneous, plaintiff should have excepted to it.

Upon a review of the entire case, we have discovered no error of the court in granting a nonsuit.

No error.