Civil action, heard on case agreed. *Page 800 
The action is to restrain defendant board from issuance and sale of $150,000 of bonds of said district pursuant to an election under ch. 79, Private Laws of 1920. From the facts stated in the case agreed it appears that under ch. 53, Laws of 1909, the Laurinburg Graded School District was established, including the town of Laurinburg and two or more adjacent mill villages; that said school was conducted under that and other pertinent legislation, and prior to 1920, the defendant board had incurred or assumed a floating indebtedness to the amount of $12,280.33, for the following purposes: A note for deficiency in operation of the schools during previous years, $1,250; a note for plumbing addition and stoves at East Laurinburg School, $2,339.65; note for plumbing repairs and stoves at old public school building, $2,216.95; note for desks for central building and fire escapes for same, $3,664.85; note for furnishing teachers' home, $2,808.89; and that all of these notes were issued for money borrowed by defendant board for special purposes, and none of the indebtedness so evidenced was authorized by a vote of the electors of the district.
It having become necessary to establish greater educational (749) facilities for the said school district, the General Assembly, at the Extra Session of 1920, in chapter 79, passed a statute providing that on a petition of the majority of the trustees of the district, the commissioners of the town of Laurinburg should call an election within sixty days from the filing of the petition for the purpose of submitting to the vote of the qualified voters of the said school district the question of "whether the Laurinburg Graded School District shall issue bonds to the amount of $150,000 for the following purposes: (a) To float the present unbonded indebtedness of the district; (b) to construct and properly equip a high school building for said district; (c) to remodel and properly equip the present graded school buildings of the district; and (d) to purchase or build and equip a home for the teachers." The said act containing provision that "if a majority of the qualified voters in said election vote in favor of issuing said bonds, then the board of trustees are empowered to issue the same." etc. Again, the act provides, in section 4, that "upon the issuing of said bonds by the board of trustees, it shall be the duty of the board of commissioners of the town of Laurinburg to levy a special tax sufficient to pay the interest on said bonds and to provide a sinking fund sufficient to discharge the same when they matured, said tax to be levied upon all property and polls within the graded school district, the constitutional equation being observed in levying the tax."
It is also stated in the case agreed that the registry of voters had for the purpose of said election, the books were kept open only from *Page 801 
1 July to 9 July; that at said election, in addition to the question submitting the bonds, there was submitted also the question of levying a special tax on the property of the district, sufficient to pay the interest on said bonds, and providing a sinking fund, but the question of levying a poll tax was not submitted. It further appears that at said election, of 251 qualified voters duly registered in the district, there were 235 votes cast for issuing the bonds and levying the tax, one vote cast against the measure, and fifteen of the duly qualified voters did not vote.
It further appears that the defendant board have contracted to sell the said bonds to Stacy Braun of Toledo, Ohio, at par value, and accrued interest, and it is their purpose to carry out said contract by causing said bonds to be executed and delivered as negotiable obligations of said district.
Upon these, the facts chiefly pertinent, with additional facts found by his Honor in reference to time in which the registration books were kept open, judgment was entered in terms as follows:
"This cause coming on to be heard before Lane, J., as a controversy without action upon an agreed case duly verified and filed in court, and upon the affidavits of O. L. Moore, S. J. Siler, and S.W. Covington, which were submitted to the court as a part of the agreed case, the court, in addition to the matters set (750) forth in the first eleven paragraphs of the agreed case which are here found as facts, finds the following facts:
"That the order of the board of commissioners of the town of Laurinburg, calling the said election, specified the four purposes for which the said bonds were to be issued, including that of paying the unbonded indebtedness of the said school district, as set forth in the act of the General Assembly, ratified on 25 August, 1920, and entitled `An act to provide for the better facilities in the Laurinburg Graded School District,' and that the notice of said order of said board of commissioners, which was duly published in the Laurinburg Exchange, contained a full statement of all the purposes set forth in said act of the General Assembly, including the purpose of paying the unbonded indebtedness of the said district; that the said newspaper is the only paper published in the said district, and has six hundred subscribers in the territory covered by the said school district, and that the said notice of said election was published in said paper, which is published weekly, for a period of seven weeks next preceding the closing of the registration of books for the said election.
"That at the time of the opening of the said registration books, and at the time of the said election, the purposes for which the said *Page 802 
bonds were issued were generally known by the people of the said school district, including the purpose of paying the unbonded indebtedness of the said school district.
"That while the registration books for said election were open all electors who presented themselves for registration were duly registered, and since the said books closed no elector presented himself or herself for registration; that no elector in said school district has lost his vote by reason of the failure to strictly comply with the law as regards the time for keeping open the books, but that all were registered who deserved to be; that the election was fairly held, and the people had a free and full opportunity to express their will upon the questions submitted to them; that the election and the registration were well advertised, and that the time for registration and for the election, as appointed by the law and the order of the board of commissioners, was well known to the people, and the right to register was available to all who felt interest enough in the election to cast their vote; that there is no evidence of the failure of any voter to register, but if there were those who did not register, such failure to register was not due to the shortness of the time the registration books were open, but to the apathy or indifference on the part of such voter or voters; that the election and the purposes for which the said bonds were to be issued met with the general acquiescence of the people, and there was no organized opposition thereto.
"That all acts, conditions, and things required by the (751) Constitution and laws of the State of North Carolina to happen, exist, and be performed precedent to and in the issuance of the said bonds, have happened, exist, and been performed, except the failure to keep the registration books open the full twenty days, as required by law, which failure, the court finds, did not affect the election, and if the said books had been kept open the full twenty days, the result of the election would not have been changed:
"It is therefore, upon the facts, admitted in the agreed case and upon the facts found by the court, adjudged that the failure to keep the registration books open the full twenty days does not affect the validity of the said election or the said bonds; that the said election was a ratification by the people of a moral obligation of the unbonded indebtedness incurred by the trustees of the district in the proper management of the schools of the district; that the said act of the General Assembly, and every part thereof, ratified on 25 August, 1920, is valid and not in violation of the Constitution; that the words in said act, `a majority of the qualified voters in said *Page 803 
election,' means a majority of the persons qualified to vote in said election.
"It is further adjudged and decreed that the said election was properly held, and is valid, and the bonds issued pursuant thereto are and will be valid and binding obligations of the said school district; that the said trustees have the right and power to sell and deliver the said bonds to the said purchasers, and to use the proceeds therefrom for the purposes set forth in the said act of the General Assembly.
"It is further adjudged and decreed that the said board of commissioners of the town of Laurinburg, under the provisions of the said act of the General Assembly, have the power and authority to levy a special tax sufficient to pay interest and provide a sinking fund upon all property within the school district.
"It is further adjudged and decreed that the plaintiff's motion for an order restraining the defendants from issuing and delivering the said bonds as binding obligations to the purchasers be and the same is hereby denied, and the costs of the action are ordered taxed against the plaintiff by the clerk."
From this judgment the plaintiff excepted and appealed, assigning errors.
It is objected to the validity of this bond issue, first, that the act of 1920, under which the election was held, is unconstitutional in that it provides for approval of the measure by a majority of those voting at the election. In construing (752) Art. VII, sec. 7, of the Constitution, which requires the approval of a "majority of the qualified voters therein," before any county, city, or town or other municipal corporation can contract a debt or levy a tax, etc., except for necessary expenses, it has been repeatedly held that the term "qualified voters therein" means all persons resident in the district and qualified to vote there, as evidenced by a valid registry of voters made pursuant to law, and unless a majority of such voters shall approve the measure, a majority of those voting will not suffice. Long v. Comrs., 181 N.C. 146; Williamsv. Comrs., 176 N.C. 554; Clark v. Statesville, 139 N.C. 490.
In our opinion, however, the present statute does not come within the inhibition of the principle. There is a presumption against an interpretation that will render a law invalid, Black on Interpretation of Laws, p. 89, and the present statute clearly permits, if it does *Page 804 
not require, the construction that a majority of the qualified voters of the district is intended. Apart from this, our decisions on the subject are to the effect that although a statute should provide that only a majority of those voting is required, yet if a majority of the qualified voters actually approve, this cures the defect and the election will be upheld.Riggsbee v. Durham, 99 N.C. 341; Wood v. Oxford, 97 N.C. 228. In the present case it appears that in a registry showing 251 qualified voters in the district, 235 were cast for the issuing of the bonds and levying an adequate property tax, and with only one vote dissenting, the objection is disallowed.
Appellant objects further that the registration books were only kept open from the first to the ninth of July preceding the election, whereas, the statute, C. S. 5947, provides that the books shall remain open for twenty days. It is always better that the requirements of the law should be observed and it may be that the officials charged with this duty should be dealt with for a wilful default if this can be established, but in the instant case the judge, hearing the matter on further evidence taken by consent, finds in this connection that the matter was fully known and discussed; that opportunity was afforded to every voter to register; that there is no evidence of the failure of any voter to register or that any application was made to register after the books were closed; that the measure was very generally acquiesced in and no organized opposition thereto. On these, and the other pertinent findings of the court, it has been held that the election will not be declared invalid for the reason suggested, and, on authority, this exception must also be disallowed. Hillv. Skinner, 169 N.C. 405.
Again, it is insisted that the act and election had thereunder are invalid for the reason that the law provides for the payment of the floating indebtedness, consisting chiefly in repairs, (753) improvements, desks, etc., the same not being for necessary expenses, and having been contracted without a vote of the people of the district. It has been held that a debt of this character may not be regarded as a necessary expense within the meaning of Art. VII, sec. 7, of the Constitution. Williams v. Comrs., 176 N.C. 554;Sprague v. Comrs., 165 N.C. 603. But there is nothing inherently vicious in this indebtedness; on the contrary, it is shown to be an altogether meritorious claim, expended for the necessary maintenance of the schools, and of which the district is even now enjoying the benefit, and this being clearly an indebtedness which the electors, proceeding under a proper statute, could authorize, we are of opinion that acting under like sanction they may ratify and thus make valid. This has been held with us in reference to legislative measures. Reid v. R. R., 162 N.C. 355, and there are *Page 805 
authoritative decisions elsewhere extending the principle to the action of the electorate. Township Board v. Carolan, 182 Ill. 119; McGillivray,Appellant, v. Joint School District, 112 Wis. 254; Baker v. Seattle,2 Wn. 576; Williams v. Showdy, County Treasurer, 12 Wn. 362.
It is further contended that the election and the proposed bond issue predicated thereon should not be approved because the authorities, departing from the provisions of the statute under which they acted, have submitted the question only of a property tax, thus ignoring the requirement of the law as originally passed that the tax should be laid also on the poll, and that the constitutional equation between the two should be observed. In a case at the present term,Proctor v. Comrs., ante, 56, the Court has held that where a municipality is proceeding to act under a certain statute, the requirements of the statute must be observed. But the principle does not apply to the facts presented on this record, for the reason that after the enactment of the law in question and before election held, this portion of the statute requiring a tax upon the poll has been set aside by a constitutional amendment approved by the people in the fall of 1920, and becoming effective on the certificate of the Governor, on 1 January, 1921. Under Art. V, sec. 1, of the Constitution as originally adopted, the General Assembly was required to levy a capitation tax on every male inhabitant of the State over twenty-one and under fifty, which shall be equal to the tax on property valued at $300, with the provision that the State and county capitation tax combined shall not exceed $2 per head. In the construction of this section the Court has held that its provisions, both as to the limitation in amount and the proportion to be observed between the property and the poll, applied only to the ordinary taxation for State and county purposes, and that under and by virtue of subsequent sections of the article, the question of taxation in cities, towns, and special-tax districts, both as to the amount and the proportion between the property and the poll, or (754) whether there shall be any tax on the poll, was in the discretion of the Legislature, subject to the provisions of Article VII, section 7, requiring a vote of the people whether the proposed debt was for other than necessary expenses. Moose v. Comrs., 172 N.C. 419;Perry v. Comrs., 148 N.C. 521; Wingate v. Parker, 136 N.C. 369;Jones v. Comrs., 107 N.C. 248. This, as stated, being the original provision of the Constitution and the authoritative construction of the same, and under its operation the poll tax having become unduly burdensome by reason of special legislation in certain localities, by an amendment ratified in the fall of 1920, the section referred to was abrogated, and the following substituted in its stead: *Page 806 
"SECTION 1. Capitation tax; exemptions. The General Assembly may levy a capitation tax on every male inhabitant of the State over twenty-one and under fifty years of age, which said tax shall not exceed $2, and cities and towns may levy a capitation tax which shall not exceed $1, but no other capitation tax shall be levied. Commissioners of the several counties and of the cities and towns may exempt from the capitation tax any special case on account of poverty or infirmity."
It will thus be noted that the requirement as to the proportion between the poll and property tax is entirely eliminated, and that the only poll tax permitted is one by the State, which may not exceed $2, and by the cities and towns, which may not exceed $1, and that no other poll tax may be imposed.
In so far as a poll tax is concerned, this substituted section of the Constitution being, as it is, inhibitive in terms and plain of meaning, is to be considered as self-executing and as to all elections held and liabilities incurred after it became a part of our organic law, has the effect of repealing all laws and clauses of laws which impose a poll tax in contravention of its provisions. Kitchin v. Woods, 154 N.C. 565, and authorities cited. Under the clause, therefore, of the section, "That no other capitation tax shall be levied," this school district, composed, as it is, of the town of Laurinburg and two or more unincorporated mill villages or settlements, is a special-tax district, and is without power to levy a capitation tax of any amount, and the authorities having charge of the matter, in proper recognition of this principle, were right in submitting the question of the property tax alone, and thus providing for the interest and sinking fund contemplated and required by the law.
It may be well to note that as to all liabilities theretofore incurred, and all bonds theretofore issued under statutes or elections requiring the levy of a tax on both property and poll, the power and obligation to levy the taxation on both will continue, for a State, no more by constitutional amendment than by statute, can impair the vested rights held by the creditor in assurance of his debt. (755) Smith v. Comrs., ante, 149, citing, among others, Port of Mobile v. Watson, 116 U.S. 289.
There is no merit in the objection also urged by appellant that the election was held on the order and under the supervision of the municipal authorities of the town of Laurinburg. It has long been recognized that the Legislature has full power to create these taxing districts for special governmental purposes, and in the exercise of this power it is not restricted to towns or counties or other, the ordinary, political subdivisions of the State. Smith v. Trustees, 141 N.C. 143, *Page 807 
approved as late as Woodall v. Comrs., 176 N.C. 377, and in many other cases. In application of the principle, the Legislature, in the original act, ch. 53, Laws of 1919, has created a special school district, composed, as stated, of the town of Laurinburg and adjacent territory, and there is no reason why it should not, as it has done in this instance, confer upon the municipal authorities of a town within the district the power to order an election on the petition of the school authorities of the district, and to control and supervise the same. It would seem to be a very satisfactory and efficient method of taking the sense of the voters on the question, and thus obtaining lawful authority to issue the bonds as the statute provides.
We are of opinion that the bonds in question will constitute a valid indebtedness of the school district and the judgment dissolving the injunction is
Affirmed.
Cited: Jones v. New Bern, 184 N.C. 134; Miller v. School Dist.,184 N.C. 202; Galloway v. Bd. of Ed., 184 N.C. 248; Burney v. Comrs.,184 N.C. 277; Bd. of Ed. v. Bray, 184 N.C. 487; S. v. Kee, 186 N.C. 473;Whitley v. Washington, 193 N.C. 243; Green v. Asheville, 199 N.C. 520; Dixonv. Comrs. of Pitt, 200 N.C. 219; Glenn v. Comrs. of Durham, 201 N.C. 240;Nash v. Comrs., 211 N.C. 303; Bank v. Bryson City, 213 N.C. 170; Green v.Briggs, 243 N.C. 749.