THE STATE OF FLORIDA, *ex rel.* J. B. JOHNSON, ATTORNEY GENERAL, *Relator*, v. L. E. GOODGAME, H. L. SUDDUTH, GEORGE H. MCKENZIE, J. WILL BROWN AND FRANK M. NELSON, *Respondents*.

En Banc.

Opinion Filed May 5, 1926.

*Carter & Yonge,* for Relator;

*J. M. Sapp, Ira A. Hutchison* and *Stokes & Phillips,* for Respondents.

BUFORD, J.—Upon the relation of the Attorney General this court issued a writ of *quo warranto* requiring the respondents to answer by what warrant or authority they claim to have, use, enjoy, exercise and perform the·functions, franchise and powers of the offices of commissioners of the municipality of the City of Panama City in Bay County, Florida.

The respondents by answer claim authority to act as such municipal officers by virtue of elections held pursuant to

Chapter 11678, No. 343, Laws of Florida, Extraordinary Session, November, 1925. The title and some pertinent sections of the Act are as follows:

"AN ACT TO ABOLISH THE PRESENT MUNICIPAL GOVERNMENTS OF THE CITY OF PANAMA CITY, THE TOWN OF MILLVILLE AND CITY OF ST. ANDREWS, IN THE COUNTY OF BAY, AND STATE OF FLORIDA, AND TO ESTABLISH, ORGANIZE AND CONSTITUTE A MUNICIPALITY TO BE KNOWN AND DESIGNATED AS THE CITY OF PANAMA CITY, BAY COUNTY AND STATE OF FLORIDA; TO DEFINE ITS TERRITORIAL BOUNDARIES AND TO PROVIDE FOR ITS JURISDICTON, POWERS AND PRIVILEGES.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF FLORIDA:

"Section 1. (A) That the present Municipal Government of the city of Panama City, Bay County, State of Florida, be and the same is hereby abolished.

"(B) That the present Municipal Government of the Town of Millville, Bay County, State of Florida, be and the same is hereby abolished.

"(C) That the present Municipal Government of the City of St. Andrews, Bay County, State of Florida, be and the same is hereby abolished.

"Section 2. That the Municipality to be known and designated as the City of Panama City is hereby established, organized and constituted in the County of Bay, State of Florida, the territorial boundaries being designated.

"Section 4. (a) That the title, rights, ownership of property, uncollected taxes, dues, claims, judgment, decrees, choses in action held and owned by the municipality of the City of Panama City, County of Bay, State of Florida,

shall pass to and be vested in the municipal corporation. hereby created and established to succeed such municipality.

(b)   That the title, right, ownership of property, un-collected taxes, dues, claims, judgments, decrees, choses in action held and owned by the municipality of the Town of Millville, County of Bay, State of Florida, shall pass to and be vested in the municipal corporation hereby created and established to succeed such municipality.

(c)   That the title, rights, ownership of property, un-collected taxes, dues, claims, judgments, decrees, choses in action held and owned by the municipality of the City of St. Andrews, County of Bay, State of Florida, shall pass to and be vested in the municipal corporation hereby created and established to succeed such municipality.

"Section 5.   That the ordinances of the former City of Panama City, Bay County, State of Florida, shall be and become the ordinances of the City of Panama City hereby organized and established until altered, amended, modified and repealed by the City Commission of the said City of Panama City, hereby created and established.

Section 6.   The elective officers of said City shall be four Commissioners and a Commissioner at large, who shall also hold the office of Mayor, all of whom shall be elected for the term of two years.   The Commissioner at large shall be elected by a majority vote of the qualified voters of the City as a whole voting.   One Commissioner shall be elected by the qualified voters of each Ward.

"Section 22.   *   *   *   The enumeration of particular powers of this charter shall not be held or deemed to be exclusive, but, in addition, to the powers enumerated herein, amended thereby, or appropriate to the exercise thereof, the City shall have and may exercise all other powers which

under the constitution and laws of Florida, it will be competent for this Charter to specifically enumerate.

"Section 160. Nothing in this Act contained, or the abolition of the municipality of the Town of Millville or of the municipality of the City of St. Andrews or of the City of Panama City or the consolidation of said municipalities as the City of Panama City, shall in anywise affect any franchise or grant heretofore made or granted to any person, or corporation for the construction, operation and maintenance of telephone systems, electric light and power plant or system and/or gas, lighting, heating and power plant or system and/or supplying said municipalities respectively and the inhabitants thereof with telephone service, electricity or electric current and/or gas, for heat, light, power and mechanical purposes and uses, or any contract between the holder of such franchise and either said municipalities of Panama City, Millville or St. Andrews or any contract between the holder of any such franchise and any private person or corporation, or the rate or rates charged or permitted to be charged for gas, electricity or electric current for heat, power, light or other purpose.

"Section 160a. That any and all franchises and grants of privileges of any kind heretofore granted by the town of Millville, City of Panama City, or City of St. Andrews, or by any municipality which has been succeeded by any of them now outstanding and held by any person, firm or corporation is hereby approved, ratified and confirmed by the City of Panama City hereby organized, and all the rights of the holders and owners of said franchises, grants and privileges and also all the obligations of the said holders and owners shall hereafter hold and continue as to the territory embraced in the municipality which granted the said franchise, grant or privilege to use the same effect as if the said municipality which granted the same had not been succeeded by the City of Panama City hereby organ-

.ized, and the City of Panama City hereby organized shall perform and carry out to the holders and owners of said franchises, grants and privileges every duty and obligation that the municipality which granted the same is bound to do.

"Section 195. All assessments and liens for sidewalks, paving or other improvements, and all certificates of indebtedness, improvement certificates, and all collections of the same heretofore made and obtained by the corporation of the City of Panama City, and all contracts, bonds, and obligations of the City of Panama City, are hereby legalized and declared valid and of full force, virtue and effect and binding in law or in equity and shall be collected by the City of Panama City and used for the benefit of that portion of said City formerly constituting the City of Panama City.

"(a) All assessments and liens for sidewalks, paving or other improvements, and all certificates of indebtedness, improvement certificates and all collections of the same heretofore made and obtained by the corporation of the Town of Millville and all contracts, bonds and obligations of the Town of Millville, are hereby legalized and declared valid and of full force, virtue and effect and binding in law or in equity, and shall be collected by the City of Panama City and used for the benefit of that portion of said City formerly constituting the Town of Millville.

"(b) All assessments and liens for sidewalks, paving or other improvements, and all certificates of indebtedness, improvement certificates and all collections of the same heretofore made and obtained by the corporation of the City of St. Andrews and all contracts, bonds and obligations of the City of St. Andrews are hereby legalized and declared valid and of full force, virtue and effect and binding in law or in equity, and shall be collected by the City

of Panama City and used for the benefit of that portion of said City formerly constituting the City of St. Andrews."

Other pertinent sections of the Act will be hereafter quoted and construed.

The Constitution of Florida contains the following:

"No bill of attainder, ex post facto law nor any law impairing the obligation of contracts, shall ever be passed." Sec. 17, Declaration of Rights, Const.

"The legislature shall have power to establish a uniform system of county and municipal government, which shall be applicable, except in cases where local or special laws are provided by the legislature that may be inconsistent therewith." Sec. 24, Art. III, Const.

"The legislature shall authorize the several counties and incorporated cities or towns in the State to assess and impose taxes for county and municipal purposes, and for no other purpose, and all property shall be taxed upon the principles established for State taxation. But the cities and incorporated towns shall make their own assessments for municipal purposes upon the property within their limits." Sec. 5, Art. IX, Const.

A demurrer to the answer presents an issue challenging the validity of Chapter 11678, Laws of Florida, upon the essential ground that the enactment does not contain sufficient provisions as required by the Constitution for the protection of the creditors of the municipalities that are abolished by the Act.

It appears that each of the three abolished municipalities has large bonded and other indebtedness still outstanding.

The Constitutional Provision referred to is as follows:

"The legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or

amend the same at any time. When any municipality shall be abolished provision shall be made for the protection of its creditors." See Sec. 8, Art. VIII, Constitution of Florida.

By the enactment of Chapter 11678 the legislature abolished the City of Panama City, the Town of Millville and the City of St. Andrews in Bay County, Florida, and created and established in lieu thereof and as successor to each of the three municipal corporations one corporation under the name of the City of Panama City, the corporate limits of which include every part of each of the abolished municipalities and also some additional territory. Section 98 of the Act provides as follows:

"The City of Panama City shall have power to levy taxes each year for the ordinary purposes of the municipality. In addition to the foregoing levy, said municipal corporation may annually levy and collect a special tax for permanent improvements and the adornment, paving and improvement of the streets and public grounds of the City and the property of the municipality beyond the limits of the City. Said corporation may also levy and collect a special tax annually not to exceed three mills upon the real and personal property in the said City, to be assessed and collected as other municipal taxes are assessed and collected for the purpose of giving publicity to the advantages, facilities and productions of Panama City, and the section surrounding and for the entertainment of its visitors. Said corporation shall also levy and collect annually upon its taxable property aforesaid, such sums as may be necessary to pay interest upon the indebtedness of the City and for the maintenance of its properties and public works, and to create a sinking fund for the payment of such indebtedness as may be incurred; and to pay the bonds of the City already issued or any bonds which may be issued in accordance with law; to pay any judgment against the

City and such sum as may be commanded to be levied by any mandamus legally issued against the City.''

Section 196 of the Act provides as follows:

''All general laws of the State applicable to municipal corporation, now or which may hereafter be enacted, and which are not in conflict with the provisions of this charter or with ordinances and resolutions hereafter enacted by the City Commission, shall be applicable to this City; provided, however, that nothing contained in this charter shall be construed as limiting the power of the City Commission to enact any ordinance or resolution in conflict with the Constitution of the State or with the United States.''

Section 1903, Revised General Statutes of Florida, provides as follows:

''TAX FOR BONDS. It is hereby made the duty of the City Council to assess and collect such taxes from the citizens and upon the property within the city, as shall be necessary for the payment of interest upon, as well as the final payment of said bonds: Provided, however, That all property shall be taxed upon the principle established by State Taxation.''

In one of the general laws of the State applicable to municipal corporations is section 1832, Revised General Statutes of Florida, which provides as follows:

''POWERS OF CORPORATION. The provisions of the previous section having been complied with the persons therein named, and their successors, shall thereupon constitute and become a body corporate with full power and authority to take and to hold property, real, personal and mixed, and to control and dispose of the same for the benefit and best interest of the corporation aforesaid, to sue and be sued, plead and be impleaded, and to do all such other acts and things as are incident to corporate bodies.''

It is contended by the relator that the former City of Panama City, City of St. Andrews Bay and the Town of

Millville as abolished each had a large bonded indebtedness; this fact is admitted.

Section 196 of the Act provides as follows:

"That the territorial boundaries of the City of Panama City as constituted on the date of passage of this Act, and all property included therein shall be held responsible for, and be bound for all contracts, judgments, and debts now held against said City and no other territory or property included herein and covered by this Act, shall be responsible for such contract, judgments and debts, nor shall any tax ever be levied upon any of such other territory or property for the payment of such contracts, judgments, and debts.

(a) That the territorial boundaries of the Town of Millville as constituted on the date of passage of this Act, and all property included therein shall be held responsible for, and be bound for all contracts, judgments and debts now held against said City, and no other territory or property included herein and covered by this Act, shall be responsible for such contract, judgments, and debts now held against said City, and no other territory or property included herein and covered by this Act, shall be responsible for such contract, judgments, and debts, nor shall any tax ever be levied upon any of such other territory or property for the payment of such contracts, judgments and debts.

(b) That the territorial boundaries of the Town of St. Andrews as constituted on the date of the passage of this Act, and all property included therein shall be held responsible for and be bound for all contracts, judgments and debts now held against said City, and no other territory or property included herein covered by this Act, shall be responsible for such contracts, judgments, and debts nor shall any tax ever be levied upon any of such other territory or property for the payment of such contracts, judgments and debts."

Section 197 of the Act provides as follows:

"That upon this Charter taking effect all the property, rights and choses in action of every kind and character on said date belonging to either the town of Millville, City of Panama City, or City of St. Andrews heretofore existing shall become and be the property, rights and choses in action of the City of Panama City hereby organized and created."

Thus, we have a case in which it is shown that three (3) municipalities have been abolished and one municipal corporation established in lieu thereof. The powers conferred upon the corporation by the legislature of Florida are:

To succeed to all the property of the abolished corporations. Section 197 of the Act. To sue and be sued; Section 185 of the Act together with section 1832, Revised General Statutes of Florida.

To assess and collect taxes, section 1903, Revised General Statutes of Florida, together with Section 98 of the Act.

To bond the property within the abolished corporations for the payment of the respective obligations of such abolished corporation: Section 196 of the Act.

The act also provides all necessary machinery for the assessment and collecting of taxes for all municipal purposes.

It was within the province of the legislature under the provision of Section 8, Article 8 of the Constitution to abolish either or all of the abolished municipal corporations but when doing so the legislature was bound to provide for the protection of the creditors of such corporation. This might have been done by providing for the continuation of the assessment and collection of taxes and the disbursement of funds by proper officials named for that purpose, without the continuation of any corporate existence; or the legislature might have done just as it did in this case, that is,

provided for the protection of the creditors by a creation of a new corporation and the creation of which had the legal effect of establishing a successor to all the rights and all the liabilities of the abolished corporation. "If a municipal corporation goes out of existence·by being annexed to or merged in another corporation, and if no legislative provision is made respecting the property and liabilities of the corporation which ceases to exist, *the corporation to which it is annexed, or in which it is merged, is entitled to all its property and is answerable for all its liabilities.* Where a municipal or public corporation is *legislated out of existence and its territory annexed to other corporations,* the latter, unless the legislature otherwise provided, are *entitled to its property,* and severally liable for a proportionate share of its then subsisting legal debts, and vested with the power to raise revenue wherewith to pay them by levying taxes upon the property transferred and the persons residing therein. The creditors of the extinguished corporation were held in the case cited in the note to have a remedy *in equity* against the corporations succeeding to its property and powers, to have the amount ascertained, apportioned, and adjudged to be paid."

> Dillon on Municipal Corporations, 5 Ed. Section
> 357, and numerous cases there cited.

It appears to the writer that the law is well settled that "Where the legislature of a State has given a local community, living within designated boundaries, a municipal organization, and by subsequent Act or series of Acts repeals its charter and dissolves the corporation and incorporates substantially the same people as a municipal body under a new name for the same general purpose, and the great mass of the taxable property of the old corporation is included within the limits of the new, and the property of the old corporation used for public purposes is transferred without consideration to the new corporation for

the same public uses, the latter, notwithstanding a great reduction of its corporate limits, is the successor in law of the former and liable for its debts.'' Mobile v. Watson, 116 U. S. 289, Graham v. Folsom, 200 U. S. 248, Thompson v. Abbott, 61 Mo. ·176, Dillon on Municipal Corporations, 5 Ed. Section 357 and 358; Also ''Where particular powers are expressly conferred, and there is also a general grant of power, such general grant by intendment included all powers that are fairly within the terms of the grant and are essential to the purposes of the municipality, and not in conflict with the particular powers expressly conferred.'' Liveris v. Harper, — Fla. —104 South. Rep. 853, see also State ex rel. Ellis v. Tampa Water Works, 56 Fla. 858, 47 South. Rep. 358.

''It must be assumed that in passing a law the legislature intended a valid enactment, rather than one in conflict with the Constitution; the Statutes should, if possible, be so construed as to be Constitutional rather than as conflicting with organic law.'' Harper v. Galloway, 58 Fla. 255, 51 South. Rep. 226; Christopher v. Mungen, 61 Fla. 513, 55 South. Rep. 273; State v. Phillips, 70 Fla. 240, 70 South. Rep. 367. ''Unless a statute is in positive conflict with some designated or identified provision of the Constitution it should not be held unconstitutional.'' Lainhart v. Catts, 73 Fla. 735, 75 South. Rep. 47.

It appears clear that the municipal corporation, the City of Panama City, created by chapter 11678, Laws of Florida, Acts of the Extraordinary Session of Legislature, November, 1925, was successor to the municipal corporations, the City of Panama City, City of St. Andrews and the Town of Millville; that as such successor it became owner of all public property formerly owned by the abolished municipalities and that it became charged with the duty of discharging all outstanding obligations of such abolished municipalities and is authorized by law to levy and collect

taxes upon the property within the territory formerly constituting each of the said municipalities for the purpose of paying the outstanding obligations of such municipalities and that failing to do so its officials may be forced by mandamus to levy and collect such taxes and apply the same to the discharging of such respective obligations. That these conditions are so clearly expressed in the Statutes, or so forcefully implied by the positive mandate of the Statutes that the conclusion is inevitable.

Certainly it was not the purpose of the framers of the Constitution to require the legislature to make more definite or more adequate provision for the protection of the creditors of an abolished corporation than that which had existed prior to the act of abolition.

This being true the legislature has made provision for the protection of creditors of the abolished municipalities and has not violated the provisions of the Constitution. The writ should therefore be quashed.

The writ is quashed.

BROWN, C. J., AND ELLIS AND TERRELL, J. J., concur.

WHITFIELD AND STRUM, J. J., dissent.

WHITFIELD, J.—The controlling question to be determined is whether Chapter 11678, Laws of Florida, in abolishing three municipalities and establishing one municipality in lieu of three, has complied with the mandate of the constitution that ''when any municipality shall be abolished, provision shall be made for the protection of its creditors.'' The organic provision that ''no law impairing the obligation of contracts shall ever be passed,'' is a prohibition upon legislative action and relates to the *obligation* of contracts; while the organic command that ''when any

municipality shall be abolished, provision shall be made for the protection of its creditors,'' requires affirmative and positive action by the legislature in making provision for the protection of creditors when a municipality is abolished. It may not be necessary that the required provision for the protection of such creditors, be contained in any specific and express terms, words or language, but there must be positive and affirmative provision duly made, that in fact and in law protects the creditors of a municipality *when* it is ''abolished.'' Provisions omitted from a statute cannot be supplied by the courts. Ebert v. Poston, 266 U. S. 548, 45 Sup. Ct. Rep. 188.

Chapter 11678, Laws of Florida, the Charter Act, provides that three municipalities are ''abolished'' and a new municipality is ''established,'' covering the territory of the former three with additional territory. The Charter Act validates all assessments and liens, certificates of indebtedness, improvement certificates and collections of the same ''heretofore made and obtained'' severally by the three prior municipalities, and also validates all contracts, bonds and obligations of the then abolished municipalities severally the amount due to the three to be collected by the newly established City of Panama City and used for the benefit of that portion of said city which formerly constituted severally the three former municipalities; and provides that all property included in such former municipalities respectively, ''shall be held responsible for, and be bound for all contracts, judgments, and debts now held against'' them respectively, ''and no other territory or property included herein and covered by this Act, shall be responsible for such contract, judgments and debts, nor shall any tax ever be levied upon any such other territory or property for the payment of such contracts, judgments and debts.''

These provisions tend to negative a purpose to violate

the obligation of the contracts of the abolished municipalities; but they are insufficient to constitute an affirmative compliance with the organic command to make provisions for the protection of the creditors of the abolished municipalities. The provision that amounts due to the abolished municipalities severally shall be collected by the new city and "used for the benefit of" the portion of the new city that were parts of the former entities severally, is not an adequate provision for the protection of creditors as required by the constitution. It does not provide for the payment of debts.

Section 4 of the Charter Act vests in the new municipality the "title, rights, ownership of property, uncollected taxes, dues, claims, judgments, decrees, choses in action held and owned by the" three abolished municipalities, but the new city is not expressly required to pay the debts of either of the former municipalities. And Section 197 provides that all the property, rights and choses in action of every kind and character belonging to either of the three abolished municipalities "shall become and be the property, rights, and choses in action of the City of Panama City hereby organized and created."

The Charter Act gives the new city power to levy and collect annually taxes upon the real and personal property in the said city, and provides that it shall levy and collect "such sums as may be necessary to pay interest upon the indebtedness of the city and for the maintenance of its properties and public works, to create a sinking fund for the payment of such indebtedness as may be incurred; and to pay the bonds of the city already issued or any bonds which may be issued in accordance with law; to pay any judgment against the city and such sum as may be commanded to be levied by any mandamus legally issued against the city."

This provision relating to the taxing power should not be

construed to extend beyond its plain purpose, particularly when its controlling features appear to relate to prospective obligations. If the provision as to "bonds of the city already issued," or any other provision, be construed to have reference to the then existing bonds *and* also to other indebtedness of the three abolished municipalities, such provisions must be construed with the provisions making prior indebtedness obligations upon only the property that was in the prior municipalities severally. Thus the tax levy, provisions are not entirely free from equivocation thereby producing uncertainty and doubt.

The Charter Act does not appear to specifically authorize the new municipality to sue and be sued, though there are references to suits against it; and the provision of the Revised General Statutes of 1920, on that subject seems to confine the authority therein conferred, to municipalities incorporated under the general law. See Sec. 1832, Rev. Gen. Stats. 1920.

Whatever may be the general rules of law relative to the implied liability of a municipality for the debts of its abolished predecessor (1 Dillon on Munic. Corp. (5th ed.) 336), in Florida the constitution expressly commands that "when any municipality shall be abolished, provision shall be made for the protection of its creditors;" and this organic mandate obviously requires affirmative, positive and unequivocal provisions to be duly enacted for the protection of the creditors of each and every municipality *when* it is abolished. The provision of the constitution here considered was not in existence and was not material to the decision in Broughton v. City of Pensacola, 93 U. S. 266, which case, like Mobile v. Watson, 116 U. S. 289, 6 Sup. St. Rep. 398, is not entirely analogous to this one.

There is ambiguity as to the taxing power of the new municipality "to pay bonds of the city already issued" or "to pay any judgment against the city," and it is not

apparently made the duty of the new municipality to duly levy and collect taxes and to pay the debts of the former three; nor is the new municipality specifically authorized to be sued to enforce the indebtedness of the several former municipalities to be paid from the property in the territory that was covered by those former municipal entities severally, though there is reference to a mandamus to compel a tax levy.

The Revised General Statutes of 1920, do not supply the provisions required by the constitution for the protection of the creditors of municipalities that are abolished by special legislative enactments. If any of the provisions of Sections 1920, 1922 or other sections of the Revised General Statutes would seem to be applicable, such provisions are inconsistent with the special Charter Act, Chapter 11678, Laws of Florida, and under Section 24, Article III of the Constitution, the special law "shall be applicable," which special law does not comply with the organic command that when any municipality shall be abolished, provision *shall* be made for the protection of its creditors.

STRUM, J., concurs.