RONALD GREEN v. CITY OF ASHEVILLE.

(Filed 1 October, 1930.)

1. **Municipal Corporations K d—Under the facts of this case city annexing entire incorporated town had the right to levy tax on property therein.**

Where under provision of statute the boundaries of a city are enlarged to include an entire incorporated town whose charter is thereby repealed, and the city assumes all of the outstanding obligations of the town and succeeds to all of its assets, revenues, taxes, assessments, etc., the obligations of the town are not extinguished by the repeal of its charter, and under constitutional mandate the means for their enforcement must not be impaired, and the city assuming the burden thereof is entitled to all the remedies of the town then available for enforcing its out-

standing engagements, and where the property of a resident of the town has been listed for taxation during May preceding the town's annexation in June, and the property owner has paid no taxes to the town for the year for which his property was thus listed, the city annexing such town and succeeding to its tax list has the power to levy an *ad valorem* tax on the property, and the levy is not objectionable on the ground that the property was not within the boundaries of the city when the situs of the property was fixed for the ensuing year. *Reynolds v. Asheville*, *ante*, 212, cited and distinguished.

2. **Constitutional Law E b—In this case held: to relieve resident of annexed town from taxation would impair means of enforcing town's obligations.**

Ordinarily, the obligation of a contract is coeval with the undertaking to perform, and includes all the means which, at the time of its making, the law afforded for its enforcement, and where a city annexes an entire incorporated town and assumes its outstanding indebtedness, the property of the residents of the town may not be relieved of taxation for that year without lessening the means provided by law for the enforcement of the engagements of the town.

APPEAL by plaintiff from *Oglesby, J.*, at August Term, 1930, of BUNCOMBE.

Controversy without action submitted on an agreed statement of facts, which, so far as essential to a proper understanding of the legal questions involved, may be abridged and stated as follows:

1. Chapter 205, Private Laws 1929, provided that, subject to an election to be held on 30 April, 1929, which was held and carried, the boundaries of the city of Asheville were to be extended so as to take in additional territory, some incorporated and some not.

2. By the terms of said act, the date of extension was deferred until 30 June following.

3. Prior to and at all times during the year 1929, the plaintiff owned real and personal property located in the town of Kenilworth, a municipal corporation duly created by act of Assembly, the entire territory of which was included within the new boundaries of the city of Asheville, as set forth in the said extension act.

4. Section 7 of said extension act is, in part, as follows: "That if the corporate limits of the city of Asheville are extended as herein provided, the city of Asheville shall assume all the valid and subsisting outstanding bonded indebtedness and other liabilities incurred for necessary expenses of the incorporated towns of Kenilworth, Biltmore, South Biltmore, and the city of Asheville shall succeed to all the assets, revenues, taxes, assessments, real and personal properties of said municipal corporations. This act shall operate as a repeal of the charters of any municipal corporation, other than the city of Asheville, the entire territory of which has been embraced within the extended limits of the city of Asheville by virtue of this act."

5. Section 11 provides: "That if the corporate limits of the city of Asheville be extended by said election as herein provided, it shall be the duty of the governing bodies of the municipal corporations included in the corporate limits of the city of Asheville as extended, to turn over to the city of Asheville all official books, deeds, records, moneys and other assets, including all of its real and personal property, and the same shall thenceforth become the property of the city of Asheville."

6. On 30 June, 1929, the town of Kenilworth had an outstanding valid and subsisting bonded indebtedness of $388,700; notes outstanding in the sum of $28,250, as well as other liabilities, all incurred for necessary municipal expenses.

7. During the month of May, 1929, plaintiff duly listed and returned for taxation his said property then and there situated in the town of Kenilworth and then and there subject to taxation by the town of Kenilworth, and said tax return was filed with the duly constituted authorities of Buncombe County, North Carolina, in the manner provided by law and thereafter and by reason thereof plaintiff became indebted to the town of Kenilworth for and during the tax year 1929 as a property owner and taxpayer residing within said town in such amount and to such extent as the properly constituted authorities of said town might duly determine by an assessment upon said plaintiff's property thereafter to be made in the manner provided by law.

8. As soon as available, all tax lists of Buncombe County which relate to property and polls within the city of Asheville, are furnished to the city as its own tax lists.

9. On 8 October, 1929, the board of commissioners of the city of Asheville duly passed a tax ordinance, levying an *ad valorem* tax of $1.62 on each $100 valuation of property, and endorsed the tax lists, prepared in conformity with said ordinance, so as to affect all taxable property within the city, including that annexed under the extension act aforesaid.

10. The rate of *ad valorem* tax levied by the town of Kenilworth prior to its inclusion within the boundaries of the city of Asheville was $1.50 on each $100 valuation of property.

The plaintiff contends that as his property was not within the corporate limits of the city of Asheville on 1 May, 1929, when the situs of taxable property was fixed by law for the ensuing year, and did not come within such limits until 30 June thereafter, the city was without power on 8 October, 1929, to levy a valid *ad valorem* tax on his property prior to the tax year 1930.

The defendant, on the other hand, contends that the tax in question is in all respects legal and valid.

From a judgment upholding the tax, the plaintiff appeals, assigning error.

*J. Scroop Styles for plaintiff.*
*George Pennel, Chas. N. Malone and Chas. Earl Jones for defendant.*

STACY, C. J. The plaintiff rests his case entirely upon the decision in *Reynolds v. Asheville, ante,* 212. But the two cases are controlled by different principles and are readily distinguishable: Firstly, on the ground that the plaintiff in the Reynolds suit lived in the town of Biltmore Forest, only a portion of which was included within the new boundaries of the city of Asheville, and had paid his municipal taxes to the town of Biltmore Forest for the year 1929, while the plaintiff in the instant case lives in what was formerly the town of Kenilworth and has paid no municipal taxes at all for the year 1929; and, secondly, because the charter of the town of Kenilworth has been repealed, with the city of Asheville assuming all of its outstanding obligations and succeeding to all of its assets, revenues, taxes, assessments, etc., while the charter of the town of Biltmore Forest was not repealed by the act in question, but remained existent.

In other words, the plaintiff in the *Reynolds case,* having paid an *ad valorem* tax to the town of Biltmore Forest for the year 1929, sought to enjoin, and did restrain, the city of Asheville from levying and collecting another tax on the same property for the same year, while the plaintiff, in the instant case, though living in the town of Kenilworth for a part of the year and thereafter in the city of Asheville, has paid no municipal taxes at all for the year 1929, and is seeking to escape all such taxes. To try to avoid a double tax is one thing; to seek to escape all taxation is quite another. The charter of the town of Kenilworth has been repealed, and the city of Asheville alone may act in the matter. *Watson v. Commissioners,* 82 N. C., 17; 19 R. C. L., 733.

Another distinguishing feature between the two cases is, that the town of Kenilworth was heavily indebted, with bonds and notes outstanding, at the time of its incorporation into the city of Asheville, which would seem to call for an application of the principles announced in *Broadfoot v. Fayetteville,* 124 N. C., 478, 32 S. E., 804 (as stated in the first three headnotes):

"1. Debts due from a municipal corporation are not extinguished by the repeal of its charter, and still exists, notwithstanding that repeal.

"2. When the old charter is repealed and a new one is granted, in which latter are bestowed by law all the benefits and property of the old, the burden of the old must be borne by the new; where the benefits are taken, the burdens are assumed.

"3. The city of Fayetteville is the successor of the town of Fayetteville, and liable for its debts, and the remedies for the enforcement of them, existing when the contract was made, must be left unimpaired by the Legislature, unless a substantial equivalent is provided."

The translation of all municipal powers and properties of the town of Kenilworth to the city of Asheville and the assumption by the latter of all the outstanding obligations and liabilities of the former, in order to conform to the constitutional provision against "impairing the obligation of contracts," would necessarily carry with it the means and assurances then available for the enforcement of the outstanding engagements of the town of Kenilworth, unless some just equivalent were substituted therefor. *Broadfoot v. Fayetteville, supra; Spitzer v. Commissioners,* 188 N. C., 30, 123 S. E., 636; *Hammond v. McRae,* 182 N. C., 747, 110 S. E., 102; *Smith v. Commissioners,* 182 N. C., 149, 108 S. E., 443; *Port of Mobile v. Watson,* 116 U. S., 289; *Merriwether v. Garrett,* 102 U. S., 472; *City of Galena v. Amy,* 5 Wall., 705; *State ex rel. Johnson v. Goodgame,* 91 Fla., 871, 108 So., 836, 47 A. L. R., 118, and note.

To release the plaintiff's property from taxes for the year 1929, without providing a just equivalent therefor, would, to this extent, lessen the means, provided by law, for the enforcement of the engagements of the town of Kenilworth at the time of their making. *Nelson v. St. Martin's Parish,* 111 U. S., 716. Ordinarily, it may be said that the obligation of a contract is coeval with the undertaking to perform, and includes all the means which, at the time of the ·making of the contract, the law afforded for its enforcement. 6 R. C. L., 324. And as the prohibition against the impairment of the obligation of contracts is absolute, the amount and extent of such impairment is not material. *Farrington v. Tenn.,* 95 U. S., 679.

Moreover, there is a presumption against an interpretation that will render a law invalid. *Hammond v. McRae, supra;* Black on Interpretation of Laws, 89. Indeed, section 13 of the act in question provides: "That nothing contained in this act shall be construed as in any manner impairing the legal obligations of any of the municipal corporations or water and sewer districts included in the area hereinbefore described, but all such legal obligations shall remain in full force and virtue."

As no reversible error has been made to appear on the record, the judgment will be upheld.

Affirmed.