Civil action to restrain issuance and delivery of refunding bonds pursuant to ordinance of defendant city.
The pertinent facts, duly found and set out in the judgment, follow:
1. The town of Bryson City has outstanding bonded indebtedness in the principal sum of $365,000, represented by bonds issued and held by purchasers prior to 1 July, 1933, the accrued interest thereon and a portion of the principal now being in default.
2. The town proposes to refinance its existing bonded indebtedness by issuing refunding bonds "in lieu of, and to be exchanged for a like amount of its said outstanding bonds," which said refunding bonds are "to be delivered to the present holders of the original bonds in lieu of and in exchange for said original bonds and the defaulted interest now due and unpaid thereon."
By ordinance duly adopted 8 October, 1937, pursuant to the Local Government Act, ch. 60, Public Laws 1931, as amended by ch. 258, Public Laws 1933, and ch. 357, Public Laws 1935, it is provided, among other things, "that in each year while any of said refunding bonds shall be outstanding there shall be levied upon all the property within the corporate limits of the town of Bryson City, except only such property as would be exempt from taxation under the laws in force at the time of the creation of the indebtedness refunded, a tax sufficient to pay the principal and interest of said refunding bonds as the same shall become due and payable . . . and that the holder or holders of said refunding *Page 167 
bonds shall be subrogated to all the rights and powers of the holders of such indebtedness so refunded."
3. At the time of the creation of this original indebtedness, and the bonds representing same were sold and delivered, there was no limitation, other than that contained in the Constitution and general laws, upon the total tax that the town might levy for the payment of said bonds and accrued interest.
4. Under the provisions of ch. 81, Public-Local Laws 1935, as amended by ch. 338, Public-Local Laws 1937, the town of Bryson City is prohibited from levying any annual taxes in excess of $1.60 on the $100 valuation on the taxable property situate within the corporate limits of said town for all purposes for the years 1935-1939, and perhaps for succeeding years.
5. A levy of $1.60 on the $100 valuation of taxable property within the corporate limits of Bryson City has not produced sufficient revenue to pay the principal and interest on the outstanding bonded indebtedness of said city, and will not produce sufficient revenue to pay the principal and interest on the proposed refunding bonds as they became due and payable.
6. It is to the best interest of all concerned that the present bonded indebtedness be refunded and that the proposed refunding bonds be exchanged for the original bonds.
Upon the foregoing findings his Honor concluded that said refunding bonds would not be subject to the tax limitation prescribed by ch. 81, Public-Local Laws 1935, as amended by ch. 338, Public-Local Laws 1937, and entered judgment accordingly.
Plaintiff appeals, assigning errors.
The power of municipal taxation, within constitutional bounds, may be expanded or contracted according to the legislative will, provided that in limiting or reducing the power previously granted the obligation of existing contracts is not thereby impaired. Smith v. Comrs., 182 N.C. 149,108 S.E. 443; Green v. Asheville, 199 N.C. 516, 154 S.E. 852; 6 R. C. L., 327. Here it is admitted, or found as a fact, that the prohibition contained in ch. 81, Public-Local Laws 1935, as amended by ch. 338, Public-Local Laws 1937, against levying any annual taxes in excess of $1.60 on the $100 valuation of property within the corporate limits of Bryson City, if permitted to stand, will impair the obligation of the city's outstanding bonds. As to these engagements, therefore, the limitation contained in said act must be held to be inoperative. Spitzer v.Comrs., 188 N.C. 30, 123 S.E. 636. *Page 168 
Generally speaking, it may be said that the obligation of a contract is coeval with the undertaking to perform, and includes all the means which the law afforded for its enforcement at the time of the making of the contract. Green v. Asheville, supra. In other words, the obligation of a contract, within the meaning of the constitutional prohibition against impairment, includes all the means and assurances available for its enforcement at the time of its execution. Bateman v. Sterrett, 201 N.C. 59,159 S.E. 14; Barnes v. Barnes, 53 N.C. 366; Jones v. Crittenden,4 N.C. 55; 6 R. C. L., 324 et seq.
"The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it the contract, as such, in the view of the law, ceases to be, and falls into the class of those `imperfect obligations,' as they are termed, which depend for their fulfillment upon the will and conscience of those upon whom they rest. The ideas of right and remedy are inseparable. `Want of right and want of remedy are the same thing.'" Mr. Justice Swayne in Edwards v.Kearzey, 96 U.S. 595; also reported in 79 N.C. 664.
As pertinent and illustrative of the principle may be instanced Clark v.Reyburn, 8 Wall., 322, where it was said that the remedy provided by statute for the foreclosure of a mortgage, in existence at the time of its execution, enters into and becomes a part of the contract of the parties, and any change by legislative action, which substantially and materially affects this remedy to the injury of the mortgagee, is a law "impairing the obligation of contracts," within the meaning of the constitutional provision on the subject; and Brine v. Ins. Co., 96 U.S. 627, where it was held that a statutory right of redemption, existent at the time of the making of a mortgage, enters into and becomes a part of its terms. See 6 R. C. L., 365, and cases there cited.
Speaking to a question parallel to the one here presented, in Hubert v.New Orleans, 215 U.S. 170, Mr. Justice Day, delivering the opinion of the Court, said: "The power of taxation conferred by law entered into the obligation of the contracts, and any subsequent legislation withdrawing or lessening such power, leaving the creditors without adequate means of satisfaction, impaired the obligation of their contracts within the meaning of the Constitution."
And in support of the position the following was quoted from the opinion of Mr. Justice Field in Louisiana v. New Orleans, 102 U.S. 203: "`The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced — by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is *Page 169 
to that extent weakened. The Latin proverb, Qui cito dat bis dat — he who gives quickly gives twice — has its counterpart in a maxim equally sound — Qui serius solvit, minus solvit — he who pays too late pays less. Any authorization of the postponement of payment, or of means by which such postponement may be effected, is in conflict with the constitutional inhibition.'"
Again, in Port of Mobile v. Watson, 116 U.S. 289, it was said: "Therefore the remedies for the enforcement of such obligations assumed by a municipal corporation, which existed when the contract was made, must be left unimpaired by the Legislature, or, if they are changed, a substantial equivalent must be provided. Where the resources for the payment of the bonds of a municipal corporation is the power of taxation existing when the bonds were issued, any law which withdraws or limits the taxing power and leaves no adequate means for the payment of the bonds is forbidden by the Constitution of the United States, and is null and void."
It is likewise well established that the laws in force at the time and place of the making of contracts enter into and become integral parts thereof as much so as if they had been expressly incorporated therein.Eckard v. Ins. Co., 210 N.C. 130, 185 S.E. 671; Headen v. Ins. Co.,206 N.C. 270, 172 S.E. 349; Bateman v. Sterrett, 201 N.C. 59,159 S.E. 14; Trust Co. v. Hudson, 200 N.C. 688, 158 S.E. 244; Housev. Parker, 181 N.C. 40, 106 S.E. 136; Mfg. Co. v. Holladay, 178 N.C. 417,100 S.E. 567; Hill v. Kessler, 63 N.C. 437.
The law on the subject is very clearly stated by Mr. Justice Swayne in the leading case of Von Hoffman v. City of Quincy, 4 Wall., 535: "It is also settled that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it as if they were expressly referred to or incorporated in its terms. This principle embraces those which affect its validity, construction, discharge, and enforcement. . . . Nothing can be more material to the obligation than the means of enforcement. Without the remedy the contract may, indeed, in the sense of the law, be said not to exist, and its obligation to fall within the class of those moral and social duties which depend for their fulfillment wholly upon the will of the individual. The ideas of validity and remedy are inseparable, and both are parts of the obligation, which is guaranteed by the Constitution against invasion. The obligation of a contract `is the law which binds the parties to perform their agreement.' The prohibition has no reference to the degree of impairment. The largest and least are alike forbidden. . . . It is competent for the states to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt *Page 170 
has been made to fix definitely the line between alterations of the remedy, which are to be deemed legitimate, and those which, under the form of modifying the remedy impair substantial rights. Every case must be determined upon its own circumstances. Whenever the result last mentioned is produced the act is within the prohibition of the Constitution, and to that extent void.
"The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced — by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened." And see Louisiana v. New Orleans, 102 U.S. 203; Seibert v.Lewis, 122 U.S. 284; Hendrickson v. Apperson, 245 U.S. 106; Williams v.Suydam, 6 Wall., 723, 18 L.Ed., 967.
It is provided by the Local Government Act, ch. 60, Public Laws 1931, as amended by ch. 258, Public Laws 1933, and ch. 356, Public Laws 1935, that in refunding, funding, or renewing indebtedness incurred prior to 1 July, 1933, the ordinance or resolution adopted by any local unit, authorizing the issuance of bonds for such purpose, may contain provision whereby the holders or purchasers of said bonds "shall be subrogated to all the rights and powers of the holders of such indebtedness," which said provision "shall have the force of contract between the unit and the holders of said bonds." Michie's N.C. Code of 1935, sec. 2492 (50) b. Such a provision was incorporated in the ordinance authorizing issuance of the bonds here sought to be enjoined; hence the provision, having the sanction of law, will enter into and become an integral part of the bonds when issued, with contractual force and effect, which may not be impaired by subsequent legislation, as was held by the court below. Hammond v. McRae, 182 N.C. 747,110 S.E. 102; Eckard v. Ins. Co., supra; Headen v. Ins. Co., supra;Long v. St. John, 170 So. (Fla.), 317.
A similar question was before the Court in Blanton v. Comrs.,101 N.C. 532, 8 S.E. 162, where it was held (as stated in 2nd head-note, which accurately digests the opinion): "Where a county, prior to the adoption of the present Constitution, contracted a debt for which it issued bonds, and since that Constitution went into effect the board of commissioners issued other bonds in exchange for the first, under an act of the General Assembly which provided that such `bonds shall be deemed and held to be a continuation of the liability created by the county' for the original bonds: Held, that all the securities and remedies which attached to the bonds first issued entered into and became a part of the new obligation, and that the limitations upon the rate of taxation contained in the Constitution of 1868 did not apply to them." *Page 171 
It is the contention of the plaintiff, however, that while the refunding of a subsisting indebtedness may not create any new or additional debt, or extinguish the original obligation, still the refunding bonds would represent a different contract evidencing the indebtedness. Fleming v.Turner, 122 Fla. 200, 165 So. 353; S. v. Milam, 113 Fla. 491,153 So. 100. In other words, plaintiff says that while the retirement of the bonds, presently outstanding, with refunding bonds, extending the dates of payment and lowering the rate of interest, would not extinguish the original indebtedness, nevertheless the indebtedness would then be evidenced by new and different contracts or obligations, entered into after the enactment of ch. 81, Public-Local Laws 1935, as amended by ch. 338, Public-Local Laws 1937, and that the taxing power in support of such new contracts is to be determined by the laws in effect at the time of the issuing of the refunding bonds, nothing else appearing. Nash v. Comrs. of St. Pauls,211 N.C. 301, 190 S.E. 475; Hicks v. Greene County, 200 N.C. 73,156 S.E. 164; Klein v. Kinkead, 16 Nev. 194.
The case then comes to a single question: Are the refunding bonds here proposed entitled to the benefit of the same security — that is, the same taxing power, the pledge of which protected and formed a part of the obligation of the original bonds? Upon the record as presented we think the question should be answered in the affirmative.
This conclusion is induced by the following considerations: In the first place, no new debt is to be created. Secondly, the funding bonds are to be issued "in lieu of, and to be exchanged for a like amount of its said outstanding bonds." Thirdly, the funding bonds are in reality but renewals and extensions of the original bonds. Fourthly, the parties are the same; the debt is the same, and the transaction is sanctioned by legislative enactment. The conclusion is supported, either directly or in tendency, by the following authorities: Broadfoot v. Fayetteville, 124 N.C. 478,32 S.E. 804; Blanton v. Comrs., supra; Mann v. Allen, 171 N.C. 219,88 S.E. 235; McCless v. Meekins, 117 N.C. 34, 23 S.E. 99; Edwards v.Kearzey, supra; Keeney v. Kanawha County Court, 115 W. Va. 243, 175 S.E. 61;Folks v. County of Marion, 121 Fla. 17, 163 S.E. 298; W. B. Worthen Co.v. Kavanaugh, 295 U.S. 56; Los Angeles County v. Rockhold, 3 Cal.2d 192,44 P.2d 340, 100 A.L.R., 149.
It follows, therefore, that the tax limitation prescribed in ch. 81, Public-Local Laws 1935, as amended by ch. 338, Public-Local Laws 1937, should be disregarded or considered as inoperative so far as the refunding bonds here proposed are concerned. This is the result of the judgment below, and we are disposed to think that the right conclusion has been reached.
Affirmed. *Page 172